IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NUANCE COMMUNICATIONS INC., and PHONETIC SYSTEMS LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 06-105-SLR |
| TELLME NETWORKS, INC., | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT TELLME NETWORKS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STAY ACTION PENDING ARBITRATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
    Attorneys for Defendant Tellme Networks, Inc.

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan
Iian D. Jablon
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
(310) 277-1010

March 31, 2006

TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF PROCEEDING ................................................................. 1

II.    SUMMARY OF ARGUMENT ..................................................................................... 1

III.   STATEMENT OF FACTS ........................................................................................... 3

       A.   TELLME OBTAINS A PERPETUAL LICENSE TO "ALL" OF
            NUANCE COMMUNICATIONS' INTELLECTUAL
            PROPERTY ....................................................................................................... 3

       B.   NUANCE COMMUNICATIONS MERGES INTO A
            DELAWARE CORPORATION AND LATER BECOMES
            NUANCE USA ................................................................................................... 6

       C.   TELLME'S USE OF NUANCE USA'S VOICE RECOGNITION
            SOFTWARE ....................................................................................................... 8

       D.   NUANCE USA AND NUANCE FILE SEPARATE ACTIONS
            AGAINST TELLME ........................................................................................... 8

       E.   TELLME FILES AN ARBITRATION COUNTERCLAIM
            AGAINST NUANCE USA SEEKING A DETERMINATION OF
            TELLME'S RIGHTS TO USE NUANCE USA'S SOFTWARE
            AND AN ORDER REQUIRING NUANCE USA TO DEFEND
            AND INDEMNIFY TELLME AGAINST PLAINTIFFS'
            CLAIMS ............................................................................................................. 9

IV.    ARGUMENT ............................................................................................................. 10

       A.   THE ARBITRATION PROVISION OF THE 1999 AGREEMENT
            IS GOVERNED BY THE FEDERAL ARBITRATION ACT ........................... 10

       B.   UNDER THE FAA, TELLME'S CLAIMS AGAINST NUANCE
            USA MUST BE ARBITRATED ........................................................................ 10

       C.   UNDER THE FAA AND THE COURT'S INHERENT
            AUTHORITY, THIS ACTION SHOULD BE STAYED UNTIL
            TELLME'S CLAIMS AGAINST NUANCE USA HAVE BEEN
            ARBITRATED ................................................................................................... 12

V.     CONCLUSION .......................................................................................................... 16

TABLE OF AUTHORITIES

Page(s)

**Cases**

Al-Haddad Bros. Enters., Inc. v. M.S. Agapi,
  551 F. Supp. 956 (D. Del. 1982)........................................................................ 13

AT&T Techs., Inc. v. Communications Workers of Am.,
  475 U.S. 643 (1986)................................................................................. 10, 11

Baker v. Sadick,
  162 Cal. App. 3d 618 (Cal. Ct. App. 1984) ....................................................... 11

Battaglia v. McKendry,
  233 F.3d 720 (3d Cir. 2000)........................................................................... 11

Brayman Constr. Corp. v. Home Ins. Co.,
  319 F.3d 622 (3d Cir. 2003).......................................................................... 11

Evans v. Hudson Coal Co.,
  165 F.2d 970 (3d Cir. 1948).......................................................................... 15

Great W. Mortgage Corp. v. Peacock,
  110 F.3d 222 (3d Cir. 1997)..................................................................... 10, 11

Harvey v. Joyce,
  199 F.3d 790 (5th Cir. 2000) ........................................................................ 14

Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.,
  640 F. Supp. 175 (S.D.N.Y. 1986) ................................................................. 13

Hill v. Gen. Elec. Power Sys., Inc.,
  282 F.3d 343 (5th Cir. 2002) ........................................................................ 13

Pacific Inv. Co. v. Townsend,
  58 Cal. App. 3d 1, 10 (Cal. Ct. App. 1976) ..................................................... 11

Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazioni v.
  Lauro,
  555 F. Supp. 481 (D.V.I. 1982), aff'd, 712 F.2d 50 (3d Cir. 1983).................... 13

Roadway Package Sys., Inc. v. Kayser,
  257 F.3d 287 (3d Cir. 2001)............................................................................. 9

Sam Reisfeld & Son Import Co. v. S.A. Eteco,
  530 F.2d 679 (5th Cir. 1976) ........................................................................ 13

Subway Equip. Leasing Corp. v. Forte,
  169 F.3d 324 (5th Cir. 1999) ........................................................................ 14

Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.,
  372 F.3d 339 (5th Cir. 2004) .............................................................. 3, 13, 14

Page(s)

**Statutes**

9 U.S.C. § 2...................................................................................................................... 9

9 U.S.C. § 3................................................................................................................ 3, 13, 15

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................ 3, 15

## I.    NATURE AND STAGE OF PROCEEDING

Plaintiffs Nuance Communications, Inc. ("Nuance") and its wholly-owned subsidiary Phonetic Systems, Ltd. filed this patent infringement action against defendant Tellme Networks, Inc. ("Tellme") on February 17, 2006.    This motion to stay is Tellme's initial appearance in the action.    Tellme and Nuance Communications USA, Inc. ("Nuance USA"), which is a subsidiary of plaintiff Nuance, are currently parties to a separate arbitration proceeding in California that was initiated on March 2, 2006.    Tellme now hereby moves to stay plaintiffs' patent infringement action pending resolution of the arbitration between Tellme and Nuance USA.

## II.    SUMMARY OF ARGUMENT

This patent infringement action is an improper attempt by plaintiffs to circumvent a valid and enforceable arbitration provision contained in a license agreement between Tellme and Nuance USA, a subsidiary of plaintiff Nuance.    Pursuant to this license agreement, Tellme has a "license under all of Nuance's intellectual property rights" to use the accused products and services in connection with its business.    The license agreement is not limited to patents or other rights issued in the name of the subsidiary Nuance USA -- rather, Nuance USA expressly warranted in the license agreement that "it owns or has license rights to sublicense the Software and has all necessary intellectual property rights, title, and interest to grant the rights set forth herein to Customer [Tellme], free of any claims, liens, or conflicting rights in favor of any third party."    The accused Tellme products and services are built around and incorporate software provided from Nuance USA to Tellme pursuant to the license agreement, and are therefore clearly subject to the broad license provisions set forth in the license agreement.

On February 17, 2006, Nuance USA accused Tellme of breaching the license agreement, and took the position that Nuance USA was terminating the agreement effective March 19, 2006. Tellme disputes that there has been any breach of the license agreement, and this issue is currently pending in arbitration in California. Tellme has also asserted counterclaims in the arbitration relating to the licenses granted to it by Nuance USA. Among the issues the panel of arbitrators will decide in the pending arbitration are:

1.    Does the use of Tellme's products and services (which include Nuance USA software) require a license under the patents-in-suit?

2.    If the use of Tellme's products and services requires a license under the patents-in-suit, does Tellme already possess such a license pursuant to its broad right to "all of Nuance's intellectual property rights"?

3.    If the use of Tellme's products and services requires a license under the patents-in-suit and Tellme does not already have such a license, is Nuance USA required under the express terms of the license agreement to obtain a license on Tellme's behalf?

4.    If the use of Tellme's products and services requires a license under the patents-in-suit and Tellme does not already have such a license, is Nuance USA liable for damages for breach of its warranty?

5.    Is Nuance USA required to defend and indemnify Tellme against plaintiffs' claims that Tellme's products and services infringe their patents?

The adjudication of these issues -- which involve the same operative facts and are inherently inseparable from plaintiffs' claims in this action -- will likely have a dispositive impact on the pending litigation. For example, if the arbitration panel determines Nuance USA

has not breached its warranty against infringement because the accused products and services do not practice the patents-in-suit, the current action will be moot.  In the alternative, if the arbitration panel determines that the accused products and services do practice the patents-in-suit, then the express terms of the license agreement require that Nuance USA obtain a license for Tellme under the patents-in-suit (or provide Tellme with non-infringing software), and also require that Nuance USA defend and indemnify Tellme against plaintiffs' claims.  Tellme suspects that this litigation will not last long if Nuance USA is required to defend and indemnify an action brought by its parent company and sister-subsidiary.

Thus, regardless of how the arbitration panel decides the issues currently in arbitration, the issues in the current case will be mooted or substantially altered, and it would be a waste of judicial resources -- as well as the resources of the parties -- to proceed with the patent litigation before the arbitration panel has ruled on the threshold issues involved.  Moreover, Tellme's contractual right to arbitrate its disputes with Nuance USA will be destroyed or substantially harmed if this patent litigation is allowed to proceed before the arbitration has been completed.  E.g., Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V., 372 F.3d 339, 343 (5th Cir. 2004).  Accordingly, pursuant to 9 U.S.C. § 3, the Court's inherent authority to control its docket, and Fed. R. Civ. P. 12(b)(1), Tellme hereby requests that the Court stay this action pending resolution of the ongoing arbitration between Tellme and Nuance USA.

### III.    STATEMENT OF FACTS

#### A.    TELLME OBTAINS A PERPETUAL LICENSE TO "ALL" OF NUANCE COMMUNICATIONS' INTELLECTUAL PROPERTY

Tellme is the provider of the world's largest voice application network.  Millions of customers throughout the United States use Tellme's computer automated voice applications

- 3 -

to, for example, use their telephones to obtain customer service, connect to directory assistance listings, or obtain stock prices or sports scores.  Declaration of Jeff Kunins ("Kunins Declaration"), ¶ 3.

In November 1999, Tellme entered into a "Strategic Partner License and Support Agreement" (the "Agreement") with Nuance USA's corporate predecessor -- a California corporation named "Nuance Communications."  Declaration of Lisa C. Berry ("Berry Declaration"), ¶ 2, Exh. A.  Under the Agreement, Nuance Communications granted Tellme a perpetual license to all of Nuance Communications' intellectual property, including Nuance Communications' voice recognition software.  For example, Nuance Communications granted Tellme:

> a worldwide, <u>perpetual</u>, fully paid-up, <u>irrevocable</u> (so long as Customer is in compliance with the terms of this Agreement), non-exclusive, non-transferable (except for assignment in accordance with Section 2.3) <u>license under all of Nuance's intellectual property rights as follows:  to use, execute, demonstrate, implement, integrate into other software programs, support, maintain, perform services with the Software in object code listed in Schedules A and B, and any Updates thereof</u> . . . .

Berry Declaration, Exh. A at 2 (Agreement, §§ 2.A & 2.A.i) (emphasis added).

The Agreement specifically contemplated that Tellme would use Nuance Communications' voice recognition software as part of an "Integrated System," which is defined in the Agreement to mean "any of Customer's computer/operating system/IVR [Interactive Voice Response] combination(s) that include and operate Nuance software."  Berry Declaration, Exh. A at 1-2 (Agreement §§ 1.5 & 2.1.A.i).  The Agreement further contemplated that Tellme would use its Integrated Systems to provide voice application "Services" to Tellme's customers.  Id., Exh. A at 11 (Agreement § 9.16.A).  "Services" is defined to mean "the provision of information and content (such as stock quotes, weather reports, news, sports reports, horoscopes,

traffic reports, soap opera updates, restaurant recommendations and driving directions) to the public via a software-based telephone interface." Id.

As part of the Agreement, Nuance Communications expressly represented and warranted that it possessed all necessary rights to enable Tellme to use Nuance Communications' voice recognition software to provide voice application and related "Services" to Tellme's customers. For example, Nuance Communications warranted that:

> it owns or has license rights to sublicense the Software and has all necessary intellectual property and other rights, title, and interest to grant the rights set forth herein to Customer, free of any claims, liens, or conflicting rights in favor of any third party[.]

Berry Declaration, Exh. A at 6 (Agreement, § 6.1.D).

Nuance Communications also agreed to defend and indemnify Tellme against any losses, costs, or damages resulting from "a claim that Software furnished and used within the scope of this Agreement infringes any patent, copyright, or trademark or other intellectual property right[.]" Id., Exh. A at 7 (Agreement, § 7.1).

Further, in the event that Tellme was ever sued for infringement in connection with its use of the software, Nuance Communications agreed to "procure (at no cost to [Tellme]) a license for [Tellme] to continue using the software in a manner equivalent to the license provided" in the Agreement. Id., Exh. A at 7-8 (Agreement, § 7.1) (emphasis added).

The Agreement includes a very broad arbitration provision, which is quoted in full below, requiring that all disputes between the parties be submitted to arbitration in San Francisco, California. Id., Exh. A at 9 (Agreement, § 9.5).

The Agreement had an initial five year term that was automatically renewable each succeeding year thereafter. Id., Exh. A at 5 (Agreement, § 5.1). However, on September 30, 2003, Tellme and Nuance Communications agreed in writing to extend the term

of the Agreement through September 30, 2007.  Berry Declaration, Exh. B at 27.  Moreover, the Agreement provides that many of its key terms shall survive termination, including the warranty and indemnification provisions, the arbitration provision, and Tellme's right to "continue to have the licenses granted on a fully paid-up and perpetual basis including the right to continue using the copies of the Software then in its possession to continue its service."  Id., Exh. A at 5 (Agreement, §§ 5.2 & 5.4).

**B.** **NUANCE COMMUNICATIONS MERGES INTO A DELAWARE CORPORATION AND LATER BECOMES NUANCE USA**

On March 10, 2000, a few months after entering into the Agreement with Tellme, Nuance Communications merged with Nuance Communications, Inc. (a Delaware corporation) to form "Nuance Communications, Inc."  Berry Declaration, Exh. C at 30.  As part of the merger, Nuance Communications, Inc. assumed "all of the debts, liabilities and obligations of [Nuance Communications] in the same manner as if [Nuance Communications, Inc.] had itself incurred them."  Id., Exh. C at 31 (§ 1.3).

In late 2005, Nuance Communications, Inc. merged with a public company known as "ScanSoft, Inc."  Berry Declaration, Exh. D at 43.  As part of the merger, Nuance Communications, Inc. became a "wholly owned subsidiary of ScanSoft."  Id.  In seeking approval for the merger, Nuance Communications, Inc. and ScanSoft represented to their shareholders that the reasons for the merger included:

> • "the ability to better serve the customer base and partners of each company with a comprehensive portfolio of technologies, applications and expertise that will enable customers to effectively deploy innovative speech-solutions";

- • "the belief that a merger with ScanSoft could enhance [Nuance's] ability to compete with larger, better-resourced competitors by bringing together the speech-focused talents, resources and intellectual property of the two companies[.]"

Berry Declaration, Exh. D at 46.

In connection with the ScanSoft merger, Nuance Communications, Inc. changed its name to Nuance Communications USA, Inc. on October 13, 2005.  Berry Declaration, Exh. C at 38-39.  A few days later, ScanSoft changed its name to Nuance Communications, Inc.  Berry Declaration, Exh. E at 52-54.

Accordingly, the party that Tellme originally contracted with is now called Nuance Communications USA, Inc. ("Nuance USA"), and Nuance USA's parent company is now called Nuance Communications, Inc. ("Nuance").  Berry Declaration, Exh. C at 38-39; Exh. D at 52-54.

There is substantial identity between Nuance USA and Nuance:  The two companies share the same CEO; they are represented by the same outside counsel in this litigation and in the pending arbitration; and the parent company's General Counsel writes letters to Tellme "on behalf of" the subsidiary.  E.g., Berry Declaration, Exh. C at 38-39; Exh. D at 52-54; Exh. H at 59-61.  Indeed, Nuance's General Counsel is the person who informed Tellme that Nuance USA would not honor its commitment to defend and indemnify Tellme against plaintiffs' patent infringement allegations.  Id., Exh. J at 64.

C.    **TELLME'S USE OF NUANCE USA'S VOICE RECOGNITION SOFTWARE**

Since 1999, when Tellme obtained the "worldwide, perpetual" license to use Nuance USA's software,[1] Tellme has used the software in several different "Integrated Systems" (i.e., Tellme products) to provide "Services." Kunins Declaration, ¶ 4. Specifically, as expressly contemplated in the Agreement, Tellme uses Nuance USA's software in its voice application products that provide information and content to the public via a software-based telephone interface. Berry Declaration, Exh. A at 11 (Agreement, § 9.16.A & B); Kunins Declaration, ¶ 4.

Although Tellme's products and services have evolved substantially since 1999, all of them have used Nuance USA's software in materially the same manner. Kunins Declaration, ¶ 5. Put another way, Tellme is not using Nuance USA's software in a substantially new or different way today compared with how Tellme was using the software back in 1999. Kunins Declaration, ¶ 5.

D.    **NUANCE USA AND NUANCE FILE SEPARATE ACTIONS AGAINST TELLME**

On February 17, 2006, Nuance's General Counsel sent Tellme a letter on behalf of Nuance USA purporting to give 30 days notice of termination of the 1999 Agreement based upon the allegation that Tellme had improperly disclosed Nuance's confidential information to certain third parties. Berry Declaration, Exh. F at 55-56. That same day, Nuance and its wholly-owned subsidiary Phonetic Systems Ltd. (collectively, "plaintiffs") filed this patent infringement action against Tellme.

---

[1]    As noted above, the Agreement was actually signed by Nuance Communications, a predecessor of Nuance USA. For convenience, Nuance USA and its predecessors are hereafter referred to collectively as Nuance USA except where it is important to differentiate.

Then, on March 2, 2006, Nuance USA filed an arbitration demand against Tellme seeking to terminate the Agreement and obtain money damages based upon the allegation that Tellme disclosed Nuance's confidential information to third parties. Berry Declaration, Exh. H at 60-61. That arbitration is currently pending in California.

**E.    TELLME FILES AN ARBITRATION COUNTERCLAIM AGAINST NUANCE USA SEEKING A DETERMINATION OF TELLME'S RIGHTS TO USE NUANCE USA'S SOFTWARE AND AN ORDER REQUIRING NUANCE USA TO DEFEND AND INDEMNIFY TELLME AGAINST PLAINTIFFS' CLAIMS**

On March 24, 2006, Tellme filed a Counterclaim against Nuance USA in the California arbitration. Berry Declaration, Exh. K at 66-70. As part of its Counterclaim, Tellme has asserted several claims that, if decided in Tellme's favor, will likely be dispositive of plaintiffs' patent infringement claims in this action. For example, Tellme seeks a declaratory judgment that Tellme is licensed under the patents at issue in this action or, alternatively, that (pursuant to the express terms of the Agreement) Nuance USA is required under the Agreement to obtain a license to the patents from its parent corporation on Tellme's behalf. Berry Declaration, Exh. K at 67-69. Tellme also seeks a declaratory judgment that Nuance USA has breached its warranty under the Agreement. Id., Exh. K at 68. Tellme also seeks a declaratory judgment ordering Nuance USA to defend and indemnify Tellme for all losses relating to this action. Id.

As explained below, Tellme's counterclaims are clearly subject to the arbitration agreement between Tellme and Nuance USA, and plaintiffs' patent infringement claims in this action should be stayed until the counterclaims have been arbitrated.

## IV.    ARGUMENT

### A.    THE ARBITRATION PROVISION OF THE 1999 AGREEMENT IS GOVERNED BY THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA") applies to any "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction."  Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 292 (3d Cir. 2001) (quoting 9 U.S.C. § 2).

The Agreement between Tellme and Nuance USA indisputably involves commerce:  It involves a California corporation (Nuance USA's predecessor) granting a "worldwide, perpetual" software license to a Delaware corporation (Tellme).  Berry Declaration, Exh. A at 1-2 (Agreement, opening paragraph and § 2.1).  Further, the Agreement contemplates that Nuance USA will deliver the software to Tellme by "electronic distribution" (Id., Exh. A at 3 (Agreement § 2.1.A.v)), and that Tellme will in turn use the software in an "integrated system" to provide "Services . . . to the public."  Id., Exh. A at 11 (Agreement § 9.16.A).

The Agreement also indisputably contains a broad arbitration clause.  See Berry Declaration, Exh. A at 9 (Agreement, § 9.5).  Accordingly, as a matter of law, the arbitration provision is subject to the FAA.  E.g., Roadway Package, 257 F.3d at 292; 9 U.S.C. § 2.

### B.    UNDER THE FAA, TELLME'S CLAIMS AGAINST NUANCE USA MUST BE ARBITRATED

All of Tellme's counterclaims against Nuance USA, including Tellme's claims for breach of warranty and breach of Nuance USA's duty to defend and indemnify Tellme, are based upon the express language of the Agreement.  Therefore, as explained below, all of Tellme's counterclaims against Nuance USA must be arbitrated.

In determining whether a claim or issue is subject to arbitration, the scope of this Court's inquiry is "narrow." Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997).  "[T]he district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate.  Once such an agreement is found, the merits of the controversy are left for disposition to the arbitrator." Id. (emphasis added).

In evaluating whether the parties have agreed to arbitrate a particular dispute, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'" AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted, emphasis added).

Here, Section 9.5 of the Agreement between Tellme and Nuance USA provides:

> Any controversy or claim between the parties, whether sounding in contract, tort, or otherwise, arising out of or relating to the formation or performance of this Agreement shall . . . be resolved by arbitration administered by the American Arbitration Association.  The arbitration shall occur in San Francisco, California.  (emphasis added).

Berry Declaration, Exh. A at 9 (Agreement, § 9.5).

In considering disputes between parties to similarly broad arbitration provisions, courts have held that virtually all disputes must be submitted to arbitration.  For example, in AT&T Techs., the Supreme Court considered a closely analogous arbitration provision[2] and held

---

[2]    Specifically, the arbitration provision in AT&T Techs. stated that "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . ." would be submitted to arbitration.  475 U.S. at 650.

that "in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." AT&T Techs., 475 U.S. at 650.

Likewise, in Brayman Constr. Corp. v. Home Ins. Co., 319 F.3d 622, 625 (3d Cir. 2003), the Third Circuit held that an arbitration provision that stated that "any dispute . . . with reference to the interpretation of [the contract], or [the parties'] rights with respect to any transaction involved" must be read to encompass "any business dealing relating, in whole or in part, to the [contract]" (emphasis added).  See also Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction . . . ."); Great W. Mortgage Corp., 110 F.3d at 228 ("[T]here is a strong presumption in favor of arbitration, and doubts 'concerning the scope of arbitrable issues should be resolved in favor of arbitration.'").

In light of these decisions, there can be no dispute that all of Tellme's claims against Nuance USA must be decided in arbitration.[3]

### C.  UNDER THE FAA AND THE COURT'S INHERENT AUTHORITY, THIS ACTION SHOULD BE STAYED UNTIL TELLME'S CLAIMS AGAINST NUANCE USA HAVE BEEN ARBITRATED

Plaintiffs Nuance and Phonetic Systems, Ltd. allege in this action that Tellme's use of Nuance USA's voice recognition software to provide services to Tellme's customers

---

[3]    The arbitration between Tellme and Nuance USA will take place in California, and will be decided under California law.  Berry Declaration, Exh. A at 9-10 (Agreement §§ 9.5 & 9.8).  In California, an arbitration award may include any form of relief that a party might recover in court.  E.g., Pacific Inv. Co. v. Townsend, 58 Cal. App. 3d 1, 10 (Cal. Ct. App. 1976) (equitable relief); Baker v. Sadick, 162 Cal. App. 3d 618, 626 (Cal. Ct. App. 1984) (punitive damages).

infringes two U.S. Patents owned by plaintiffs. Specifically, U.S. Patent No. 5,033,088, owned by Nuance, relates to a system in which speech recognition software "is utilized to receive spoken information from an incoming caller, process the information, and complete a predetermined task." See Exh. A, pg. 4 to plaintiffs' Complaint. Similarly, U.S. Patent No. 6,256,630, owned by Nuance's subsidiary Phonetic Systems, Ltd., relates to a database access system that uses a "probabilistic spoken character recognition device . . . similar to conventional speech recognition units, except that the output is probabilistic." See, e.g., Exh. B, pg. 22 to plaintiffs' Complaint.

A brief review of the relevant provisions of the 1999 Agreement and related facts demonstrates that plaintiffs' patent infringement claims are factually and legally intertwined with Tellme's pending arbitration claims against Nuance USA. As discussed above, the Agreement specifically contemplates that Tellme will use Nuance USA's software as part of an "Integrated System" to provide voice application "Services" to Tellme's customers. Berry Declaration, Exh. A at 1-2, 11 (Agreement §§ 1.5, 2.1.A.i, & 9.16). Tellme uses Nuance USA's software in the same manner today as it did when the Agreement was signed in 1999. Kunins Declaration, ¶ 5. Nuance USA expressly represented that it had all necessary rights to license its voice recognition software to Tellme for these uses. Barry Declaration, Exh. A at 6 (Agreement, § 6.1.D). Nuance USA further represented that it would defend and indemnify Tellme for any action brought against Tellme for using the software in an Integrated System, and that it would obtain a license on Tellme's behalf if Tellme was accused of infringement. Id., Exh. A at 7-8 (Agreement § 7.1). Tellme is presently seeking to enforce these representations and warranties by Nuance USA in the California arbitration, and if Tellme prevails on any of its arbitration claims then this patent infringement action will almost certainly be withdrawn or dismissed.

And, as explained above, all of Tellme's claims against Nuance USA clearly fall within the broad arbitration provision contained in the 1999 Agreement.

Plaintiffs will likely argue that the Court should not stay this action because they are not signatories to the 1999 Agreement, and therefore are not required to arbitrate their claims against Tellme. However, Tellme is not presently seeking to compel plaintiffs to arbitrate. Rather, Tellme merely seeks to stay plaintiffs' claims pending the arbitration with Nuance USA. Numerous decisions have held that where an action is based upon the same operative facts as a pending arbitration, courts should stay the action even though not all parties to the action have agreed to arbitrate because otherwise "the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir. 1976); see also Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazioni v. Lauro, 555 F. Supp. 481, 486 (D.V.I. 1982) (same), aff'd, 712 F.2d 50 (3d Cir. 1983); Al-Haddad Bros. Enters., Inc. v. M.S. Agapi, 551 F. Supp. 956, 960 (D. Del. 1982).

In considering whether to stay claims involving a non-signatory to an arbitration agreement, courts must decide whether "proceeding with litigation will destroy the signatories' right to a meaningful arbitration." Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V., 372 F.3d 339, 343 (5th Cir. 2004). Some courts hold that if a signatory's right to arbitration will be harmed by concurrent litigation, then a stay is "mandatory" pursuant to 9 U.S.C. § 3. Id. at 345 (emphasis added). Other courts have held that if a signatory's right to arbitration will be harmed by concurrent litigation, a stay is discretionary, and is based upon courts' inherent power to control their dockets rather than on 9 U.S.C. § 3. See, e.g., Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd., 640 F. Supp. 175, 177 (S.D.N.Y. 1986)

(concluding that stay was appropriate under court's inherent authority where the concurrent arbitration involved "common issues of fact and law").

In determining whether a signatory's right to arbitration will be harmed, courts consider three factors that are "neither required . . . nor exhaustive": (1) whether the disputes in arbitration and litigation involve the "same operative facts," (2) whether the claims asserted in arbitration and litigation are "inherently inseparable," and (3) whether the litigation will have a "critical impact" on the arbitration.  Waste Mgmt., 372 F.3d at 343 & n.6; see also Hill v. Gen. Elec. Power Sys., Inc., 282 F.3d 343, 347-48 (5th Cir. 2002); Harvey v. Joyce, 199 F.3d 790, 795-96 (5th Cir. 2000).

Here, all three factors weigh heavily in favor of staying this patent action.  The disputes in both this action and the pending arbitration between Tellme and Nuance USA plainly involve the same operative facts and inseparable claims:  Tellme's potential liability in this action is based in large part upon the premise that Tellme is not licensed under the patents-in-suit.  As discussed above, a critical question in both the arbitration and this action is whether Tellme has rights under the Agreement to use the patents at issue or, if not, whether Nuance USA is required to obtain a license on Tellme's behalf.  See, e.g., Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 329 (5th Cir. 1999) (reversing trial court and ordering a stay where both litigation and arbitration involved scope of plaintiff's rights under contract).  Similarly, if Tellme prevails on its claim that Nuance USA is required to defend and indemnify Tellme for the patent infringement claims, plaintiffs will presumably dismiss this action (since their affiliate company would be paying the defense costs and any judgment).

Moreover, proceeding with this litigation would risk inconsistent results, thereby adversely impacting Tellme's right to a meaningful arbitration.  E.g., Waste Mgmt., Inc., 372

infringement claims, plaintiffs will presumably dismiss this action (since their affiliate company would be paying the defense costs and any judgment).

Moreover, proceeding with this litigation would risk inconsistent results, thereby adversely impacting Tellme's right to a meaningful arbitration.  E.g., Waste Mgmt., Inc., 372 F.3d at 345 (holding that district court erred in failing to grant a stay where there was a risk of "inconsistent results" in parallel litigation and arbitration involving claims with "factual similarities").

In short, Tellme's right to arbitrate all disputes arising under the 1999 Agreement will be destroyed or severely impaired if plaintiffs' infringement claims are allowed to proceed before the pending arbitration is concluded.  E.g., Subway Equip. Leasing Corp., 169 F.3d at 329 (holding that concurrent litigation contract rights would adversely affect rights of a party to arbitration involving the same issue).

## V.    CONCLUSION

For all the foregoing reasons, defendant Tellme Networks, Inc. respectfully requests that, pursuant to 9 U.S.C. § 3 and the Court's inherent authority, the Court stay this action pending completion of the concurrent arbitration between Tellme and Nuance USA.[4]

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
    Attorneys for Defendant Tellme Networks, Inc.

---

[4]    We note that a motion to stay pending arbitration is a responsive pleading under Fed. R. Civ. P. 12(b)(1).  E.g., Evans v. Hudson Coal Co., 165 F.2d 970, 972-73 (3d Cir. 1948).

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan
Iian D. Jablon
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
(310) 277-1010

March 31, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 31, 2006, I caused to be electronically filed Defendant Tellme Networks, Inc.'s Opening Brief In Support Of Its Motion To Stay Action Pending Arbitration with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell
> Richards, Layton & Finger

I also certify that copies were caused to be served on March 31, 2006, upon the following in the manner indicated:

### BY HAND

> Frederick L. Cottrell
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE  19899

### BY FEDERAL EXPRESS

> Mark A. Samuels
> O'Melveny & Meyers LLP
> 400 South Hope Street
> Los Angeles, CA  90071

Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com