## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

NUANCE COMMUNICATIONS, INC., a )
Delaware corporation, and PHONETIC )
SYSTEMS LTD., an Israeli corporation, )
                                )
                     Plaintiffs, )     Civil Action No. 06-105-SLR
                                )
         vs. )
                                )
TELLME NETWORKS, INC., a Delaware )
corporation, )
                                )
                  Defendant. )

## NUANCE COMMUNICATIONS, INC. AND PHONETIC SYSTEMS LTD.'S OPPOSITION TO TELLME NETWORKS, INC.'S MOTION TO STAY PENDING ARBITRATION

OF COUNSEL:
Mark A. Samuels (S.B. #107026)
Mark C. Scarsi (S.B. #183926)
Jeffrey A. Fehervari (S.B. #181124)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Attorneys for Plaintiffs Nuance Communications, Inc.
and Phonetic Systems Ltd.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

I.   NATURE AND STAGE OF THE PROCEEDING ............................................. 1

II.  SUMMARY OF ARGUMENT ............................................................................. 1

III. STATEMENT OF FACTS .................................................................................... 3

   A.   The Plaintiffs and Patentees, Nuance And Phonetic, Have No Contractual
        Relationship With Tellme ......................................................................... 3

   B.   NCUSA And Tellme Enter Into A License Agreement Allowing Tellme
        To Use NCUSA'S ASR Software ............................................................. 4

   C.   Nuance Acquires NCUSA And Does Not Assume Any Rights Or
        Obligations Under The NCUSA License .................................................. 7

   D.   Tellme Does Not Have a License to the Patents-In-Suit ........................... 7

   E.   Tellme's Products And Its Infringement Of The Patents-In-Suit .............. 9

IV.  ARGUMENT ...................................................................................................... 12

   A.   The Mandatory Stay Provisions of the Federal Arbitration Act Do Not
        Apply to the Patent Action Because Plaintiffs Nuance and Phonetic Are
        Not Bound by an Agreement to Arbitrate ............................................... 12

        1.   Application of the FAA's Mandatory Stay Provisions Are Limited
             to Signatories to an Arbitration Agreement .................................... 12

        2.   The Waste Management Decision Did Not Change the Rule that
             the FAA Only Applies to Signatories to an Arbitration Agreement,
             and it Does Not Justify a Stay in this Case .................................... 14

   B.   Tellme's Pending Arbitration with NCUSA Does Not Justify a
        "Discretionary Stay" of this Case ........................................................... 14

        1.   Tellme Has Not Demonstrated Sufficient Hardship to Justify a
             Stay ................................................................................................. 16

        2.   A Stay Will Prejudice Nuance And Phonetic and Provide Tellme
             with an Unfair Advantage ............................................................... 17

        3.   A Stay Will Not Simplify The Patent Action Because the
             Arbitration Proceeding Will Not Resolve the Questions At Issue In
             The Patent Action ........................................................................... 18

        4.   The Court Should Not Let The Fact That This Case Is In Its
             Infancy Override The Discretionary Stay Analysis ........................ 20

   C.   The Facts and Issues in the Arbitration Proceeding Are Separate and
        Distinct From Those of the Patent Action ............................................... 20

-i-

**TABLE OF CONTENTS**
(continued)

Page

1.  The Patent Action and the Arbitration Proceeding Are Not Based on the Same "Operative Facts" and Are Not "Inherently Inseparable" ................................................................................................ 21

2.  This Case Will Not Have a "Critical Impact" on the Arbitration Proceeding............................................................................................ 23

V.  CONCLUSION.......................................................................................................... 24

## TABLE OF AUTHORITIES

**Page**

### Cases

*Argos v. Orthotec LLC,*
    304 F. Supp. 2d 591 (D. Del. 2004)........................................................................... 15, 20

*Asahi Glass Co., Ltd. v. Toledo Engineering Co., Inc.,*
    262 F. Supp. 2d 839 (N.D. Ohio 2003)........................................................................ 18

*Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.,*
    761 F.2d 198 (5th Cir. 1985).......................................................................................... 15

*Cognex Corp. v. National Instruments Corp.,*
    2001 WL 34368283 (D. Del. June 29, 2001)............................................................... 20

*Dentsply Intern., Inc. v. Kerr Mfg. Co.,*
    734 F. Supp. 656, 658 (D. Del. 1990)........................................................................... 18

*DSMC Inc. v. Convera Corp.,*
    349 F.3d 679 (D.C. Cir. 2003) ....................................................................................... 13

*Evans v. Hudson Coal Co.,*
    165 F.2d 970 (3d Cir. 1948)............................................................................................. 1

*Gold v. Johns-Manville Sales Corp.,*
    723 F.2d 1068 (3d Cir.1983)............................................................................................ 18

*IDS Life Ins. Co. v. Am. Express Financial Advisors, Inc.,*
    103 F.3d 524 (7th Cir. 1996) .......................................................................................... 13

*In re Talbott Big Foot, Inc.,*
    887 F.2d 611 (5th Cir. 1989) .................................................................................... 12, 13

*Joy Technologies, Inc. v. Flakt, Inc.,*
    6 F.3d 770 (Fed. Cir. 1993)............................................................................................ 17

*Landis v. North Am. Co.,*
    299 U.S. 248 (1936)............................................................................................. 15, 16, 18

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.,*
    339 F.2d 440 (2d Cir. 1964)..................................................................................... 13, 17

*Security Insurance Co. v. Trustmark Insurance Co.,*
    283 F. Supp. 2d 612 (D. Conn. 2002)...................................................................... 16, 22

*Sierra Rutile Ltd. v. Katz,*
    937 F.2d 743 (2d Cir. 1991)..................................................................................... 13, 14

*Walker Oil & Gas Corp. v. Teekay Shipping,*
    270 F. Supp. 2d 855 (S.D. Tex. 2003) ...................................................................... 16, 22

*Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.,*
    372 F.3d 339 (5th Cir. 2004) .......................................................................... 14, 20, 23

*Xerox Corp. v. 3Com Corp.,* 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999).................... 20

## I.    NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement case brought by two plaintiffs, Nuance Communications, Inc. ("Nuance") and Phonetic Systems Ltd. ("Phonetic"), involving two patents relating to different aspects of Tellme's speech-enabled products.    Defendant Tellme Networks, Inc. ("Tellme") has sought to stay this case in favor of a pending arbitration between it and a third party, Nuance Communications, USA, Inc. ("NCUSA"), a company Nuance acquired in 2005.[1] Tellme advances two grounds to support its requested stay, but neither is applicable.  As a matter of law, Tellme is not entitled to a stay under the Federal Arbitration Act because neither plaintiff is party to any agreement to arbitrate, a threshold requirement.   Nor is Tellme entitled to a discretionary stay because Tellme cannot identify a legitimate benefit that outweighs the harm plaintiffs would suffer from the imposition of a stay.

## II.    SUMMARY OF ARGUMENT

Tellme wrongly contends that this patent infringement case brought by Nuance and Phonetic (the "Patent Action") should be stayed pending the outcome of an arbitration proceeding between Tellme and another separate company, NCUSA (the "Arbitration Proceeding").  The Court should deny Tellme's motion for at least the following reasons.

---

[1]    Tellme attempts to avoid filing an answer by claiming that a motion to stay pending arbitration is a sufficient Rule 12 response.  (Tellme Br. at 16 n.4) .  Tellme's assertion has no basis in law, and the case on which it relies is inapposite.  In *Evans v. Hudson Coal Co.*, 165 F.2d 970 (3d Cir. 1948), the court stated that "Rule 12(b)(1) will authorize the defendant to make an application for a stay pending arbitration if, as a matter of law, the issues presented in the instant suit are referable to arbitration." *Id.* at 972.  Here, Tellme openly concedes that it is ***not*** seeking to arbitrate the claims in this action (Tellme Br. at 14), and neither of the plaintiffs here has any contractual relationship with Tellme.

Plaintiffs respectfully ask the Court to promptly deny Tellme's motion, and order Tellme to answer plaintiffs' complaint forthwith.

RLF1-3008490-1

First, as a matter of law, the Court may not rely upon the mandatory stay provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, to stay this case brought by Nuance and Phonetic, because neither plaintiff is bound by an arbitration agreement with Tellme. In a desperate effort to avoid or delay accountability for its patent infringement, Tellme is seeking to use the Arbitration Proceeding, to which neither Nuance nor Phonetic is a party, to force a stay of the Patent Action. Nuance and Phonetic are not parties to the arbitration, are not parties to an arbitration agreement with Tellme, and in fact have no contractual relationship with Tellme at all. Tellme's arbitration is with NCUSA, a separate company that Nuance acquired as a wholly-owned subsidiary in September of last year.

Tellme incorrectly argues that the FAA should nevertheless apply, because the Patent Action will negatively impact Tellme's rights in its separate arbitration with NCUSA. Allowing the Patent Action to proceed will not impact the Arbitration Proceeding at all, because the two actions involve different facts, different law and different parties. Notably, Tellme *does not seek* to arbitrate any of the patent infringement issues presented in this case. (Tellme Br. at 14).

As a fallback, Tellme urges the Court to use its discretionary authority to stay this patent action. The Court should not issue a discretionary stay for several important reasons. First, there is no overlap between the issues in the Patent Action and the Arbitration Proceeding. NCUSA initiated the Arbitration Proceeding against Tellme to seek contractual remedies for Tellme's wrongful disclosure of NCUSA's confidential information to a competitor, and NCUSA raised a number of contractual counterclaims in that arbitration in response, including a claim seeking indemnification for this Patent Action. Second, the entire premise for Tellme's counterclaim and requested stay – that NCUSA, a non-party to this case, has some indemnification responsibility to Tellme for Tellme's infringement liability in this case – is completely baseless. While

- 2 -

NCUSA's license agreement with Tellme contains a limited indemnification clause, that clause expressly excludes any indemnification obligation arising from Tellme's use of NCUSA's software "in combination with other hardware or software not provided by" NCUSA. As Tellme cannot dispute, the patents-in-suit here are asserted only against Tellme's integrated systems where Tellme has combined the NCUSA ASR software *with other hardware and software not provided by NCUSA*. Under these facts, there is no indemnification right.

Finally, Tellme also fails to justify the extreme prejudice that a stay would cause to the two plaintiffs. While courts certainly have the inherent authority to stay litigation, they do not do so lightly. Courts in this district routinely refuse to grant stays that will either prejudice the non-movant or present the movant with an unfair advantage. In this case a stay would do both. Because patent rights are valid for a limited duration, any appreciable delay would cause *per se* prejudice to Nuance and Phonetic. Similarly, a stay would unfairly benefit Tellme because it would give Tellme a *de facto* license to the intellectual property of Nuance and Phonetic for the duration of the Arbitration Proceeding.

## III.    STATEMENT OF FACTS

### A.    The Plaintiffs and Patentees, Nuance And Phonetic, Have No Contractual Relationship With Tellme

Plaintiff Nuance was incorporated in 1992 as Visioneer, Inc. and changed its name to ScanSoft, Inc. in 1999. (Sinclair Decl. ¶ 3).[2] In May 2005, ScanSoft, Inc. acquired NCUSA (which was then known as Nuance Communications, Inc.) as a wholly-owned subsidiary. *Id.* In October 2005, ScanSoft, Inc. changed its name to Nuance Communications, Inc. to reflect the company's focus on both speech and imaging technology. *Id.*

---

[2]    Declaration of Jo-Anne Sinclair, Esq. in Support of Nuance Communications, Inc. and Phonetic Systems Ltd.'s Opposition to Tellme Networks, Inc.'s Motion to Stay Pending Arbitration (hereinafter "Sinclair Decl."), filed concurrently herewith.

Plaintiff Phonetic is an Israeli corporation, headquartered in Israel. (Sinclair Decl. ¶ 5). In February 2005, Nuance (then called ScanSoft) acquired Phonetic as a wholly-owned subsidiary. (Sinclair Decl. ¶ 6). Phonetic's operations in Israel remain actively engaged in the research and development of advanced speech-related technologies. *Id.*

Tellme has no contractual relationship whatsoever with either Nuance or Phonetic. (Sinclair Decl. ¶ 7; Ross Decl. ¶ 4).[3] As such, Tellme necessarily concedes that Nuance and Phonetic have no obligation to arbitrate their patent infringement dispute with Tellme.

**B.      NCUSA And Tellme Enter Into A License Agreement Allowing Tellme To Use NCUSA'S ASR Software**

NCUSA (formerly known as Nuance Communications, Inc.[4]) incorporated in July 1994 in the State of California, and subsequently reincorporated in March 2000 in the State of Delaware. (Ross Decl. ¶ 5). In November 1999, NCUSA entered into a license agreement with Tellme (the "NCUSA License"). (Ross Decl. ¶ 6). The NCUSA License contained a number of provisions, including a license for Tellme to use NCUSA's Software and NCUSA's related intellectual property. (Ross Decl., Ex. A (NCUSA License) at § 2). The NCUSA License also included an arbitration clause calling for arbitration between NCUSA and Tellme of any dispute "arising out of or relating to the formation or performance of" the NCUSA License. (Ross Decl. ¶ 8, Ex. A (NCUSA License) at § 9.5).

The NCUSA License defined the NCUSA Software as NCUSA's automatic speech recognizer ("ASR") software, together with certain grammars or vocabularies that the NCUSA ASR software uses to recognize speech. (Ross Decl. ¶ 9). Generally, the role of ASR software

---

[3]      Declaration of M. Edward Ross, Esq. in Support of Nuance Communications, Inc. and Phonetic Systems Ltd.'s Opposition to Tellme Networks, Inc.'s Motion to Stay Pending Arbitration (hereinafter "Ross Decl."), filed concurrently herewith.
[4]      NCUSA's original corporate name, prior to its acquisition by ScanSoft, was Nuance Communications, Inc. (Ross Decl. ¶¶ 2, 5).

is to receive digital speech signals and, using sophisticated software algorithms, calculate the most likely match in a given vocabulary. (Sharp Decl. ¶ 3).[5]

A variety of systems use ASR software, including automotive applications for hands-free control of vehicle functions, automated dictation applications, and automated customer service applications. (Sharp Decl. ¶ 4). In each instance, however, the ASR software is but one component of a much larger system. For instance, to implement a system for automated control of vehicle functions, a developer would need to develop or integrate a number of additional hardware and software components to create the overall system. Such additional components might include, for example: a microphone to capture a user's speech, an analog-to-digital converter to translate that speech to digital form, software to transmit the digital speech to the ASR component and software to receive the output results from the ASR component. The system would also require other hardware and software to implement the user's commands, such as to turn on the lights, or provide a command to a navigation system. (Sharp Decl. ¶ 5). In this type of system, the ASR component would be a "black box" that the automotive application would use to translate digital audio signals into commands that the application could understand. (Sharp Decl. ¶ 6).

In connection with NCUSA's license of its ASR software to Tellme, NCUSA agreed to certain limited warranties and related obligations. The NCUSA License, however, expressly excluded any obligation to indemnify Tellme against claims of patent or other intellectual property infringement arising from Tellme's use of NCUSA's ASR software in combination with other hardware or software not provided by NCUSA. (Ross Decl. ¶ 10). The NCUSA License

---

[5]     Declaration of Douglas Sharp in Support of Nuance Communications, Inc. and Phonetic Systems Ltd.'s Opposition to Tellme Networks, Inc.'s Motion to Stay Pending Arbitration (hereinafter "Sharp Decl."), filed concurrently herewith.

also excluded any indemnity for claims of infringement based on Tellme or third party applications, as opposed to NCUSA's ASR software itself. *Id.* Specifically, Section 7.1 of the NCUSA License provides:

> 7.1 [NCUSA] Indemnity. [NCUSA] will defend and indemnify Customer [Tellme], its shareholders, directors, officers, employees, agents and affiliated companies from and against any losses, costs, or damages (including reasonable attorneys' fees) <u>against a claim that Software furnished and used within the scope of this Agreement infringes any patent</u>, copyright, or trademark or other intellectual property right, provided that (a) . . . (b) . . . and (c) . . . . <u>[NCUSA] shall have no liability for any claim of infringement to the extent such claim is based on</u>: (i) . . . (ii) <u>use of the Software in combination with other hardware or software not provided by [NCUSA] and not required to operate the Software in conformance to the Documentation; (iii) a Customer [Tellme] or third party application as opposed to the [NCUSA] Software;</u> . . . .[6]

Thus, the NCUSA License expressly limits NCUSA's indemnity obligation to claims arising from use of the NCUSA ASR software itself, and excludes from any indemnification obligation either the combination of the NCUSA ASR software with hardware or software not provided by NCUSA, or Tellme's own applications. This indemnity obligation was therefore consistent with the relationship between NCUSA and Tellme at the time of the NCUSA License. NCUSA acted in the role of a supplier to Tellme, supplying it with but one component of the various products Tellme contemplated developing. (Ross Decl. ¶ 11).

Under the NCUSA License, NCUSA had four different options if its ASR software was found to infringe third party intellectual property rights:

    (a)    modify the Software to be non-infringing (provided that such modified Software is of equal or superior functional capability);

    (b)    procure (at no cost to the Customer) a license for the Customer to continue using the Software in a manner equivalent to the license provided herein;

---

[6]    Ross Decl. Ex. A (NCUSA License) at § 7.1 (emphasis added).

(c)     replace the Software with compatible computer software of equal or superior functional capability; or

if it is not commercially reasonable for [NCUSA] to perform (a), (b) or (c), then

(d)     terminate the license for the infringing Software and refund all fees paid for that Software, prorated over a straight-line three year method.[7]

## C.     Nuance Acquires NCUSA And Does Not Assume Any Rights Or Obligations Under The NCUSA License

In 2005, over five years after entering into the NCUSA License with Tellme, NCUSA merged with Nova Acquisition Corp., a wholly-owned subsidiary of Nuance (then called ScanSoft), thus itself becoming a wholly-owned subsidiary of Nuance. (Sinclair Decl. ¶ 9). Although Nuance (then ScanSoft) acquired NCUSA, it never assumed any of the rights or obligations of NCUSA. *Id.* For example, the merger agreement provided that:

Section 2.8. *Intellectual Property.* … (g) The Merger will not, as a result of any contracts, licenses or other agreements entered into by [NCUSA], result in: (i) [ScanSoft] or its Subsidiaries (other than the Subs, but only to the extent existing prior to the Merger), being bound by any material non-compete, exclusivity obligation or other restriction on the operation of its business, or (ii) [ScanSoft] or its Subsidiaries (other than the Subs, but only to the extent existing prior to the Merger) granting to any third party any rights or licenses to any material Intellectual Property of [ScanSoft] or any affiliate of [ScanSoft] (including without limitation a covenant not to sue).[8]

## D.     Tellme Does Not Have a License to the Patents-In-Suit

As part of the 1999 NCUSA License, NCUSA granted Tellme a license to all of *its* intellectual property. Neither Nuance nor Phonetic has ever entered into any intellectual property license with Tellme. (Sinclair Decl. ¶ 7; Ross Decl. ¶ 4). While Tellme tries to imply

---

[7]     Ross Decl. Ex. A (NCUSA License) at § 7.1, ¶ 2.
[8]     Sinclair Decl. Ex. C (Agreement and Plan of Merger) § 2.8.

that the NCUSA License may extend to the patents-in-suit (Tellme Br. at 3-6), no evidence is proffered in support and the indisputable facts easily expose this as simply incorrect.



NCUSA could not possibly have granted Tellme a license to either of the patents-in-suit, Nuance's '088 Patent or Phonetic's '630 Patent, because NCUSA does not have, nor did it *ever* have, the right to grant any such license. (Sinclair Decl. ¶ 10; Ross Decl. ¶ 7). Furthermore, at the time NCUSA entered into the NCUSA License in 1999, NCUSA had no contractual relationship of any kind with either Nuance or Phonetic.[9] (Ross Decl. ¶ 7). Accordingly,

---

[9]     Prior to Nuance's acquisition of NCUSA as a wholly-owned subsidiary, Nuance was known as ScanSoft, Inc. and NCUSA was itself known as Nuance Communications, Inc. For consistency and clarity throughout, we refer to the various corporations by their current names.

NCUSA could not have authorized Tellme to exploit the patents-in-suit as part of the NCUSA License. Tellme's suggestion to the contrary is misleading at best.[10]

Tellme's insinuation that it holds a license to the patents-in-suit is further belied by the facts surrounding the plaintiffs' acquisition of those patents. In 1999, when NCUSA entered into the NCUSA License, Nuance did not even own the '088 Patent. Nuance acquired this patent in 2003 as part of a larger transaction with another company, Philips Electronics North America Corporation ("Philips"). (Sinclair Decl. ¶ 4). Similarly, Phonetic obtained the '630 Patent from the United States Patent & Trademark Office in 2001, two years after NCUSA entered into its license with Tellme. (Sinclair Decl. ¶ 5).

### E.    Tellme's Products And Its Infringement Of The Patents-In-Suit

Nuance's U.S. Patent No. 5,033,088 issued on July 16, 1991, and it will expire on July 16, 2008. (Sinclair Decl. Ex. A ('088 Patent)). The '088 Patent covers the use of a "whisper" technique in a speech-enabled application. A system practicing the invention of the '088 Patent first attempts to recognize a user's speech through Automated Speech Recognizer (ASR) software. If the ASR software is unable to reliably recognize the speech, the system replays the speech (or "whispers" it) to a human attendant who attempts to interpret the speech. *See, e.g.*, '088 Patent, claim 1. Tellme uses the technology covered by the '088 Patent through its provision of speech-enabled telephone applications (such as automated directory assistance applications) that prompt a caller to speak, record that caller's speech, attempt – but fail – to

---

[10]    Tellme's assertion that "Nuance Communications granted Tellme a perpetual license to all of Nuance Communications' intellectual property," (Tellme Br. at 3) is deceptive. Tellme is undoubtedly aware that the only entity that ever granted any license of any kind to Tellme is NCUSA, which was *formerly known* as Nuance Communications.

automatically recognize the information in the caller's speech, and then transmit the recorded

speech to a human attendant. Claim 1 of the '088 Patent provides:[11]

> 1. A method of processing verbal information received by an automated voice recognition system from a customer and completing a task on the basis of the information received, the method comprising the steps of:
>
> [a] prompting a verbal response from a human customer as an input source;
>
> [b] receiving information in the verbal response from the input source generated by the human customer, said information corresponding to a desired task to be completed;
>
> [c] recording the verbal response;
>
> [d] attempting to recognize said information through automation;
>
> [e] determining by automation if the information was reliably recognized;
>
> [f] transmitting the recorded verbal response of the human customer to a human attendant other than the human customer if it is determined that said information was not reliably recognized;
>
> [g] inputting correct information by the human attendant so as to enable the completion of the desired task through automation; and
>
> [h] completing the desired task with the automatically recognized information if it is determined that said information was reliably recognized or with the human attendant inputted information if it is determined that said information was not reliably recognized.

Phonetic's U.S. Patent No. 6,256,630 issued on July 3, 2001, and will expire on

October 3, 2014. (Sinclair Decl. Ex. B ('630 Patent)). The '630 Patent covers particular

techniques of performing database searches based on potentially erroneous search inputs and

selecting appropriate results from those searches. *See, e.g.*, '630 Patent, claim 1. Tellme

employs the '630 Patent's techniques in its phone-based applications that perform such database

searches and select appropriate results based on potentially erroneous inputs, "including, but not

---

[11]    Paragraph references, e.g. "[a]," are added to the claim language for convenience.

limited to, Tellme's directory assistance and call center applications." (Compl. ¶ 14). Claim 1 of the '630 Patent provides:[12]

> 1. A database accessing system for processing a database query, the database including a multiplicity of entries each of which has a predetermined structure comprising at least first and second words, the database query including a sequence of at least first and second inputs corresponding to said first and second words respectively, each input including a plurality of input elements, the system including;
>
> [a]    a dictionary of all words in said database;
>
> [b]    a dictionary searcher operative to find words in said dictionary which resemble each of said inputs and to assign to each found word a similarity score describing the degree to which said word resembles said input; and
>
> [c]    a database searcher operative to use said similarity scores in order to find entries in said database whose words, have cumulative scores which indicate that they most resemble said query.

The patents-in-suit are not directed toward ASR software, and Nuance and Phonetic do not contend that Tellme's use of the NCUSA ASR software by itself infringes the patents-in-suit. NCUSA's ASR software is simply a "black box" that accepts digitized speech signals and outputs the probability that those speech signals correspond to one or more entries in a given vocabulary. (Sharp Decl. ¶ 6). In contrast, Tellme's infringing products incorporate a significant number of hardware and software components beyond NCUSA's ASR software. (Sharp Decl. ¶ 7). For example, Tellme's directory assistance application, which is accused of infringing the '088 Patent, includes all of the following components:[13]

> •    application software that decides what greeting to play, or what response to solicit, from a caller that is seeking a desired listing,

---

[12]    Paragraph references, e.g. "[a]," are added to the claim language for convenience.

[13]    Sharp Decl. ¶ 7. Since the parties have yet to take discovery in this action, this characterization of Tellme's system is based on publicly available information. Nuance and Phonetic therefore reserve their rights to more thoroughly characterize the operation of Tellme's various systems once full and accurate information is available.

- software to receive output from the ASR, which output likely includes one or more possible recognized utterances and probabilities associated with each of them,

- software to assess whether the probabilities received from the ASR are sufficiently high to indicate that the user's speech was reliably recognized,

- software and hardware to forward the user's recorded speech to a human operator and hardware to play back (or "whisper") the audio for the operator if the user's speech was not reliably recognized,

- a system through which the operator can then input the listing or city identified in the user's speech, including hardware or software to connect the human operator to the caller if necessary, and

- a database consisting of all of the listings in a given geographical area, and software for searching that database and retrieving desired listings based on the results from the ASR or the operator's input.

Thus, Tellme's accused products comprise a large number of additional components combined with an automatic speech recognition engine.

## IV. ARGUMENT

### A. The Mandatory Stay Provisions of the Federal Arbitration Act Do Not Apply to the Patent Action Because Plaintiffs Nuance and Phonetic Are Not Bound by an Agreement to Arbitrate

#### 1. Application of the FAA's Mandatory Stay Provisions Are Limited to Signatories to an Arbitration Agreement

Tellme incorrectly relies on a recent case from the Fifth Circuit to argue that under the Federal Arbitration Act (FAA), the Court must stay this action if its resolution will impact Tellme's arbitration with NCUSA. (Tellme Br. at 14-15). Tellme's reading of the Fifth Circuit law, however, is incorrect. To the contrary, the Fifth Circuit has unequivocally held that "the mandatory stay provision of the [FAA] *does not apply to those who are not contractually bound by the arbitration agreement.*" *In re Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989)

- 12 -

(emphasis added). Neither Nuance nor Phonetic has any contractual relationship with Tellme, let alone an agreement to arbitrate their patent infringement claims. (Sinclair Decl. ¶ 7; Ross Decl. ¶ 4.)

The *Talbott* holding is in line with the law of other circuits that have considered the issue. For example, in *DSMC Inc. v. Convera Corp.*, 349 F.3d 679, 648 (D.C. Cir. 2003), the court considered whether a district court properly issued a stay pursuant to the FAA. The parties in *DSMC* had not signed an arbitration agreement, but their dispute was arguably related to an ongoing arbitration between DSMC and a third party. *DSMC*, 349 F.3d at 680-81. Judge Roberts, writing for the court, held that the only way the district court could have granted a stay pursuant to the FAA was if the issues in the litigation were actually referable to arbitration. *Id.* at 684. Judge Roberts went on to note that because the parties in *DSMC* did not have an agreement to arbitrate, the district court could not lawfully have granted a stay under the FAA. *Id.; see also IDS Life Ins. Co. v. Sun America, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996) ("[T]he movant for a stay, in order to be entitled to a stay under the arbitration act, must be a party to the agreement to arbitrate, as must be the person sought to be stayed."); *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 749-51 (2d Cir. 1991) (same); *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964) ("Granting of the stay cannot be justified under the terms of the [FAA]. Defendants are not parties to the arbitration agreement. The issues of the present action are not referable to arbitration between the parties."). Because Nuance and Phonetic are not parties to an arbitration agreement with Tellme, the FAA does not authorize the Court to stay this action.

2.    The *Waste Management* Decision Did Not Change the Rule that the FAA Only Applies to Signatories to an Arbitration Agreement, and it Does Not Justify a Stay in this Case

In the face of the authorities discussed above (and without even acknowledging them), Tellme relies on a Fifth Circuit case, *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339 (5th Cir. 2004), to argue that the FAA compels a stay in this case. In so doing, Tellme fails to note the factual limitations of *Waste Management* and the cases upon which it relies. All of those cases involve the ***opposite*** of the factual situation present here: the application by a ***non***signatory for a stay against a plaintiff who ***was*** a signatory to an arbitration agreement. In other words, in all of those cases, the plaintiff who filed the lawsuit was also a signatory to an arbitration agreement.

> To that end, we have ordered stays on the application of non-signatories in three recent cases. In *Subway Equipment Leasing Corp. v. Forte*, we applied § 3 to non-signatory affiliates of a signatory corporation, where the claims against them were based entirely on rights arising from the contract containing the arbitration clause. Similarly, in *Harvey*, we invoked § 3 on behalf of a non-signatory corporation whose potential liability arose and was inseparable from the claims against its signatory owner. Most recently, in *Hill*, we applied § 3 where a non-signatory lender's potential liability was inherently inseparable from claims against the second party to an arbitration agreement.

*Id.* at 342. Tellme's reliance on *Waste Management* is therefore misplaced – the FAA does not compel a stay in this case.

**B.    Tellme's Pending Arbitration with NCUSA Does Not Justify a "Discretionary Stay" of this Case**

In seeking a "discretionary stay" pending the outcome of its arbitration with NCUSA, Tellme "bears a heavy burden of showing necessity for the stay." *Sierra Rutile*, 937 F.2d at 750. As the Supreme Court has noted:

- 14 -

> the suppliant for a stay must make out a clear case of hardship or inequity
> in being required to go forward, if there is even a fair possibility that the
> stay for which he prays will work damage to some one else.

*Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). "Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation." *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985) (emphasis added). The fact that a pending arbitration may have some impact on litigation does not compel a stay. "The words 'pending arbitration' can do no more to close the judicial doors than the words 'open sesame' can do the reverse." *Id.*

Moreover, a demonstration of hardship alone does not justify the entry of a discretionary stay. Courts also consider: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Argos v. Orthotec LLC*, 304 F. Supp. 2d 591, 598 (D. Del. 2004) (*citing Xerox Corp. v. 3Com Corp.*, 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999). In balancing the interests that these factors represent, the Court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

The Court should decline Tellme's request for a discretionary stay in this case because Tellme has not met its burden of justifying such a stay. Tellme has not identified any cognizable hardship it would bear in the absence of a stay and Tellme has completely failed to demonstrate how a stay could possibly maintain an even balance. As Tellme knows, a stay in this case would provide an unfair advantage to Tellme because it would effectively grant Tellme a *de facto* license to Nuance's and Phonetic's intellectual property for the duration of the Arbitration Proceeding.

1.    <u>Tellme Has Not Demonstrated Sufficient Hardship to Justify a Stay.</u>

To justify a discretionary stay, Tellme "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 254-55. Tellme has not demonstrated such hardship or inequity.

Tellme claims "hardship" because it believes it *might* be entitled to reimbursement for its damages and defense costs in this case if it prevails on its arbitration counterclaim against NCUSA, or that NCUSA might be obligated to procure a license for Tellme. (Tellme Br. at 2-3). Such a possibility, however, does not constitute sufficient "hardship" to justify a discretionary stay. For example, in *Walker Oil & Gas Corp. v. Teekay Shipping*, 270 F. Supp. 2d 855 (S.D. Tex. 2003), the court refused to stay a plaintiff's claims despite a pending arbitration between two defendants to determine which of them was ultimately liable to the plaintiff. In denying the request for a stay, the court noted that the plaintiff, Walker, was "injured and [was] concerned about being made whole, not with the subsequent determination of who is liable under the Contract." *Id.* at 865. The Court emphasized "that staying Walter's case, a plaintiff that is a nonparty to an arbitration agreement, is only possible after a clear and unequivocal showing that the movant will be greatly prejudiced otherwise." *Id.* at 865.

Similarly, in *Security Insurance Co. of Hartford v. Trustmark Insurance Co.*, 283 F. Supp. 2d 612 (D. Conn. 2003), the court denied a motion to stay litigation pending an indemnification dispute. The court held that the ongoing indemnification dispute did not constitute "a clear case of hardship or inequity in going forward." *Id.* at 615. "On occasion it is necessary to require simultaneous arbitration and litigation. This requirement, in and of itself, will thus not suffice to justify a stay." *Id.* (citation omitted). Because Tellme has not made a "clear case of hardship or

inequity in going forward," the Court should decline Tellme's request for a discretionary stay of this case.

      2.     A Stay Will Prejudice Nuance And Phonetic and Provide Tellme with an Unfair Advantage

As the party seeking to stay this action, it is Tellme's burden to demonstrate that a stay will not impose an "undue hardship" on Nuance and Phonetic. *See Nederlandse*, 339 F.2d at 442. Tellme has not met this burden. Indeed, Nuance and Phonetic can unequivocally show that they **will be** significantly prejudiced by a stay and that a stay will provide Tellme with an unfair advantage.

First, a significant delay in the Patent Action will provide Tellme with an unfair advantage because it will allow Tellme to continue to infringe the intellectual property rights of Nuance and Phonetic. Since the Arbitration Proceeding will likely last for at least a year or more,[14] a stay of the Patent Action will effectively grant Tellme an extended, *de facto* license to continue its infringement.

Moreover, because patent rights are of limited duration, delay in resolution of this case will inevitably cause Nuance and Phonetic irreparable harm. The fundamental right of a patentee is the right to exclude infringers from practicing its patent. *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993). Nuance and Phonetic are seeking to halt infringement as soon as possible in order to protect their rights. Without an injunction, neither Nuance nor Phonetic can be properly compensated for Tellme's infringing activity, and will therefore suffer unduly if the Court grants a discretionary stay. Moreover, because the patentees, Nuance and Phonetic, are

---

[14]    The Arbitration Proceeding is only in its infancy and will likely last for at least a year. The parties are still in the early stages of selecting the arbitrators that will comprise the three-arbitrator panel. In addition, Tellme has raised a laundry list of counterclaims in response to NCUSA's original claim, which will further extend the Arbitration Proceeding's duration.

- 17 -

not parties to the pending arbitration, the rights they each assert in this case cannot be vindicated in the Arbitration Proceeding. *See Asahi Glass Co., Ltd. v. Toledo Eng'g Co.*, 262 F. Supp. 2d 839, 845 (N.D. Ohio 2003) ("the interests that Asahi seeks to protect in this suit can only be protected here, and cannot be protected in the arbitration, even if that proceeding is resolved entirely in Asahi's favor").

In the case of the '088 Patent, Nuance's harm is even more severe, because the '088 Patent will expire in just over two years. If Tellme successfully delays the Patent Action while the Arbitration Proceeding moves forward for a year or even more, Nuance will forever lose the right to enjoin Tellme's infringement of the '088 Patent. In deciding Tellme's motion, "the Court must consider whether 'there is "<u>even a fair possibility</u>"' that the stay would work damage on another party." *Dentsply Int'l., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (quoting *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir.1983) (quoting *Landis*, 299 U.S. at 254-55)) (emphasis added). Here the likelihood of harm to Nuance from a stay is beyond a "fair possibility," it is an absolute certainty.

3.    A Stay Will Not Simplify The Patent Action Because the Arbitration
       Proceeding Will Not Resolve the Questions At Issue In The Patent Action

Tellme argues that a stay will simplify issues in the Patent Action because the Arbitration Panel *might* conclude that NCUSA must indemnify Tellme in the Patent Action. Tellme also implies that the Arbitration Panel will, in the first instance, determine whether the patents-in-suit cover Tellme's products. Neither of Tellme's suppositions is even remotely possible. The NCUSA License simply does not require NCUSA to indemnify Tellme against liability imposed in this action. Moreover, because NCUSA has no conceivable indemnification obligation for Tellme's products, the Arbitration Panel will never need to reach the issue of whether Tellme's products fall within the claims of the patents-in-suit.

- 18 -

In trying to manufacture overlap between the issues in this case and the issues in the Arbitration Proceeding, Tellme has grossly mischaracterized NCUSA's indemnification obligations.    According to the unambiguous language of the NCUSA License, NCUSA's indemnification obligations specifically *exclude* infringement claims based on Tellme's use of the NCUSA software "in combination with other hardware or software not provided by [NCUSA]."  (Ross Decl., Ex. A (NCUSA License) at § 7.1.)  Because the claims in this case are all directed to products and services where Tellme has combined the NCUSA ASR software with other hardware and software not provided by NCUSA, NCUSA's indemnification obligations do not extend to the patent infringement claims asserted in this case.  (*See* Sharp Decl. ¶ 7).

Tellme's overly broad claim of NCUSA's indemnification obligation not only flies in the face of the NCUSA License, it defies common sense and strains credulity.  Tellme would have the Court believe that NCUSA agreed to indemnify Tellme for any product Tellme developed that happened to use the NCUSA ASR software as a component.  Such a position would be akin to a lumber supplier agreeing to indemnify a furniture company for any intellectual property claim against any of its rocking chairs, bed frames or coffee tables.  There is simply no way a rational component supplier would ever undertake such an obligation, and NCUSA did not do so here – as the plain language of the agreement makes abundantly clear.  (*See* Ross Decl. ¶ 11).

While Tellme will no doubt argue in reply that the Court should defer to the arbitration panel to determine the proper scope of NCUSA's indemnification obligation, this Court need not ignore the fact that Tellme is seeking to bootstrap into a discretionary stay legally incorrect positions it will apparently be taking in the Arbitration Proceeding.  For the Court to look the other way would reward Tellme for taking unsustainable positions in order to leverage them into a stay.  Because NCUSA has no colorable obligation to indemnify Tellme in this case, the

Arbitration Proceeding will not resolve any of the issues in the Patent Action. Accordingly, the Court should not enter a discretionary stay.

 4.  The Court Should Not Let The Fact That This Case Is In Its Infancy Override The Discretionary Stay Analysis

The factor of "whether discovery is complete and whether a trial date has been set" is of most importance in cases where significant litigation has occurred and a party seeks a stay "late in the game." *See, e.g., Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (discussing the use of a patent re-examination late in litigation as a delay tactic); *Cognex Corp. v. National Instruments Corp.*, 2001 WL 34368283 (D. Del. June 29, 2001) (denying stay when a request for re-examination was made near the close of discovery). Here, the factor is less important because the Patent Action is a new case. *See, e.g., Argos v. Orthotec LLC*, 304 F. Supp. 2d 591 (where this Court denied a stay of a nascent cybersquatting action in favor of a trademark office proceeding).

**C.  The Facts and Issues in the Arbitration Proceeding Are Separate and Distinct From Those of the Patent Action.**

While Tellme's reliance on *Waste Management* is misplaced because plaintiffs Nuance and Phonetic are *not* parties to an arbitration agreement, the *Waste Management* decision is instructive in further illustrating why a stay is not necessary in this case. In *Waste Management*, the Fifth Circuit instructed district courts to consider three elements in deciding whether to impose a stay: "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." *Id* at 343. None of these elements favors a stay in this case.

1.    The Patent Action and the Arbitration Proceeding Are Not Based on the
Same "Operative Facts" and Are Not "Inherently Inseparable"

This Patent Action and the Arbitration Proceeding involve distinct facts, legal theories, and parties. The Arbitration Proceeding relates to the NCUSA License between NCUSA and Tellme. As part of the Arbitration Proceeding, the arbitration panel will resolve issues surrounding whether Tellme breached the NCUSA License by disclosing confidential information to a competitor. The facts that will be relevant in the Arbitration Proceeding will be facts related to Tellme's actions in breach of the NCUSA License, including disclosure of confidential information to competitors, as well as the interpretation of the various provisions of the NCUSA License. The Patent Action, on the other hand, does not involve NCUSA at all. Instead, it centers solely on whether Tellme's products infringe the patents-in-suit. Thus, this case – unlike the Arbitration Proceeding – will focus on the details of the Tellme's products and will determine whether the patents-in-suit cover those products.

On page 2 of its brief, Tellme lists a number of issues it contends the arbitration panel will decide as part of Tellme's arbitration counterclaims against NCUSA. None of these "issues" justifies staying the present case.

First, Tellme claims that the panel will determine whether its products require a license under the patents-in-suit. (Tellme Br. at 2). Tellme is mistaken: in no event will the arbitration panel need to decide whether **Tellme's products** infringe the patents at issue in this case. Any such determination would be irrelevant under the NCUSA License. Instead, as described in detail above, the only relevant inquiry for the arbitration panel is whether **NCUSA's ASR software** is itself accused of infringing a third party patent. If NCUSA's ASR software is itself accused of infringement, then NCUSA's indemnification obligations are potentially triggered. If, however, as is actually the case, NCUSA's ASR software is not accused of infringement, then

there can be no indemnification obligation. That is the end of the inquiry. In neither event will the arbitration panel delve into the question of whether Tellme's products infringe the patents-in-suit.

Next, Tellme asserts that the panel will need to determine whether Tellme possesses a license to the patents-in-suit. (Tellme Br. at 2). Tellme already knows the answer to this question – it does not have a license to the patents-in-suit, because NCUSA does not have, nor did it ever have, any right to grant licenses to Nuance's or Phonetic's intellectual property. Tellme's claim to any such license is particularly groundless given that (1) Tellme entered into its license with NCUSA in 1999, over five years before any relationship between NCUSA and Nuance; (2) Phonetic's '630 Patent was not even issued by the patent office until 2001; and (3) Nuance itself did not acquire the '088 Patent from Philips until 2003.[15] Under these facts, Tellme's insinuation that it is licensed to the patents-in-suit is demonstrably false.

Finally, characterized as three separate issues, Tellme asserts that the arbitration panel will need to decide whether NCUSA is required to (3) obtain a license for Tellme to the patents-in-suit; (4) pay damages for breach of warranty for not providing such a license to Tellme; and (5) defend and indemnify Tellme against the present patent infringement claims. (Tellme Br. at 2). All of these counterclaims are really one and the same issue: does NCUSA have an obligation to defend and indemnify Tellme for the infringement claims brought in this suit. As noted above, NCUSA has no such obligation. *See* § IV.B.3. and § III.B., *supra*. Most importantly, arbitration claims for indemnification are an insufficient basis to justify a stay of litigation against the putative indemnitee. *See Walker Oil*, 283 F. Supp. 2d at 865; *Security Insurance*, 283 F. Supp. 2d at 615.

_____

[15]    *See* Sinclair Decl. at ¶¶ 3-5; Ross Decl at ¶ 6; *see also* Section III.D., *supra*.

2.    This Case Will Not Have a "Critical Impact" on the Arbitration
      Proceeding

Tellme fails to articulate any concrete impact that this case will have on the Arbitration

Proceeding.[16]  Instead, Tellme argues *the converse*:  that the Arbitration Proceeding is "likely to

have a dispositive impact on [this action]."  (Tellme Br. at 2).  Putting aside whether that is even

so – and as demonstrated above it is not – the courts in *Waste Management* and its predecessors

were concerned with *litigation* having a "critical impact" on the right of a party to meaningfully

arbitrate a dispute that is subject to an arbitration agreement, not the other way around.   Again,

Tellme points to alleged justifications for a stay which find no basis in the law.

Because this case and the Arbitration Proceeding concern completely different facts and

Tellme has made no showing that this case will impact the Arbitration Proceeding, the Court

should deny Tellme's request for a stay.

---

[16]    On page 3 of its brief, Tellme simply asserts – without any analysis whatsoever – that "Tellme's contractual right to arbitrate its disputes with [NCUSA] will be destroyed or substantially harmed if this patent litigation is allowed to proceed before the arbitration has been completed."  (Tellme Br. at 3).  Since that question lies at the heart of the matter, we assume that Tellme would have articulated in its moving papers any such theory of "critical impact" if there were in fact any.

RLF1-3008490-1

## V.    **CONCLUSION**

For all the foregoing reasons and authorities, the Court should deny Tellme's motion to stay this action pending the resolution of Tellme's Arbitration Proceeding with NCUSA.

_____
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Attorneys for Plaintiffs Nuance Communications, Inc. and Phonetic Systems Ltd.

OF COUNSEL:
Mark A. Samuels (S.B. #107026)
Mark C. Scarsi (S.B. #183926)
Jeffrey A. Fehervari (S.B. #181124)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Dated:  April 28, 2006