IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NUANCE COMMUNICATIONS INC., | ) | |
| PHONETIC SYSTEMS LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-105-SLR |
| | ) | |
| TELLME NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT TELLME NETWORKS, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION
TO STAY ACTION PENDING ARBITRATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendant
Tellme Networks, Inc.*

May 15, 2006

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                    ii

I.     INTRODUCTION                                                    1

II.    ARGUMENT                                                        2

       A.    NUANCE MISSTATES THE CASE LAW GOVERNING
             APPLICATION OF 9 U.S.C. § 3                               2

       B.    THE RELEVANT PROVISIONS OF THE 1999 LICENSE
             AGREEMENT DEMONSTRATE THAT THIS ACTION IS
             BASED ON THE SAME OPERATIVE FACTS AND
             INHERENTLY INSEPARABLE FROM THE PENDING
             ARBITRATION BETWEEN TELLME AND NUANCE USA                 7

       C.    TELLME SHOULD GET A STAY REGARDLESS OF WHICH
             LINE OF CASES THE COURT CHOOSES TO FOLLOW                 14

CONCLUSION                                                            20

ii.

TABLE OF CITATIONS

Page(s)

Cases

American Home Assurance Co. v. Vecco Concrete Constr. Co.,
    629 F.2d 691 (4th Cir. 1980)          2, 4, 5

AppForge, Inc. v. Extended Sys., Inc.,
    2005 WL 705341 (D. Del. 2005)          4, 15

Argos v. Orthotec LLC,
    304 F. Supp. 2d 591 (D. Del. 2004)          16

Citrus Marketing Board of Israel v. J. Lauritzen A/S,
    943 F.2d 220 (2d Cir. 1991)          5, 16

Contracting Northwest, Inc. v. City of Fredericksburg,
    713 F.2d 382 (8th Cir. 1983)          4

Danisco A/S v. Novo Nordisk, 2003 WL 282391 (S.D.N.Y. 2003)          15

DSMC, Inc. v. Convera Corp.,
    349 F.3d 679 (D.C. Cir. 2003)          5

Great W. Mortgage Corp. v. Peacock,
    110 F.3d 222 (3d Cir. 1997)          9

Harvey v. Joyce,
    199 F.3d 790 (5th Cir. 2000)          3

Hill v. Gen. Elec. Power Sys., Inc.,
    282 F.3d 343 (5th Cir. 2002)          3

IDS Life Ins. Co. v. Sunamerica, Inc.,
    103 F.3d 524 (7th Cir. 1996)          5

McCowan v. Sears, Roebuck, & Co.,
    908 F.2d 1099 (2d Cir. 1990)          5

Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp.,
    916 F.2d 402 (7th Cir. 1990)          5

Rhone Mediterranee Compagnia Francese di Assicurazioni e Riassicurazoni v. Lauro,
    712 F.2d 50 (3d Cir. 1983)          6

Subway Equip. Leasing Corp. v. Forte,
    169 F.3d 324 (5th Cir. 1999)          3

iii.

Talbott Big Foot, Inc.,
    887 F.2d 611 (5th Cir. 1989)                                        3

Walter Oil & Gas Corp. v. Teekay Shipping,
    270 F. Supp. 2d 855 (S.D. Tex. 2003)                               17

Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.,
    372 F.3d 339 (5th Cir. 2004)                             2, 3, 4, 14

WorldCrisa Corp v. Armstrong,
    129 F.3d 71 (2d Cir. 1997)                              2, 6, 15, 18

Statutes

9 U.S.C. § 3                                                       passim

## I.    INTRODUCTION

In exchange for Tellme's 1999 agreement to pay millions of dollars to Nuance USA, Nuance USA provided its voice recognition software to Tellme and licensed Tellme to integrate this software into Tellme's "computer/operating system/IVR combination(s)" to provide services to Tellme's customers.  Nuance USA expressly warranted that it "has all necessary intellectual property and other rights" to grant this license.  Now that two putative third-parties—Nuance USA's corporate parent and sister-subsidiary (collectively referred to herein as "Nuance")—have brought patent infringement claims against Tellme for operating Nuance USA's software in Tellme's integrated systems, Nuance USA has refused to honor its warranty and indemnity commitments, and has forced Tellme into arbitration to enforce these provisions of the license agreement.

The pending arbitration between Tellme and Nuance USA will necessarily involve disputes that are at issue in the pending litigation.  For example, to determine whether Nuance USA has breached its warranty of non-infringement, the arbitrators will need to determine whether the Tellme integrated systems that operate Nuance USA's software practice the claims of Nuance's patents.  In addition, the arbitrators will be required to adjudicate issues that will likely moot the instant action, such as whether Tellme has already received a license to the asserted patents given the various transactions among Nuance USA and Nuance.  If the arbitrators determine that Tellme does not already have a license to the patents, then they will need to determine whether Nuance USA is required to obtain a license to the asserted patents for Tellme, and whether Nuance USA must defend and indemnify Tellme against Nuance USA's corporate affiliates in this action.

Given the overlap and interrelationship between the issues in dispute in the arbitration and the issues in the instant case, a stay is clearly warranted.  The appellate court decisions cited

.

by both sides hold that a stay is appropriate where simultaneous litigation and arbitration involve the same set of operative facts (here, whether the Tellme integrated systems using Nuance USA's software infringe the asserted patents), the actions are inherently related (here, the same underlying infringement issues, and the interrelationship between Nuance and Nuance USA), and proceeding with the litigation would deny the right to a meaningful arbitration (here, by denying Tellme its right to have Nuance USA defend it in the litigation and forcing Tellme to bear the expense of simultaneous proceedings on opposite sides of the country).  While there is a split between circuits (and, in some cases, within circuits) concerning whether a stay is mandatory under 9 U.S.C. § 3 or discretionary under the Court's inherent authority, all circuit courts that have confronted similar facts have reached the same conclusion:  the litigation should be stayed pending the arbitration.  <u>E.g.</u>, <u>WorldCrisa Corp v. Armstrong</u>, 129 F.3d 71, 75-76 (2d Cir. 1997); <u>Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.</u>, 372 F.3d 339, 342-345 (5th Cir. 2004); <u>American Home Assurance Co. v. Vecco Concrete Contsr. Co.</u>, 629 F.2d 961, 964 (4th Cir. 1980).  This Court should reach the same result.

II.    <u>ARGUMENT</u>

A.    NUANCE MISSTATES THE CASE LAW GOVERNING
      <u>APPLICATION OF 9 U.S.C. § 3</u>

Nuance's primary legal argument is that Tellme is not entitled to a stay under 9 U.S.C. § 3 because "neither plaintiff is party to any agreement to arbitrate, a threshold requirement." Nuance Opp. Br. (D.I. 17)  at 1.  Nuance is wrong.  In determining whether a litigation should be stayed in favor of an arbitration, the question is not whether all of the parties have signed an arbitration agreement, but rather whether the <u>issue</u> in litigation is referable to arbitration.  If the issue in litigation is covered by an arbitration agreement, then the mandatory stay provisions of 9

.

U.S.C. § 3 require the Court to grant a stay even if some of the parties in the litigation are not parties to the arbitration.

The Fifth Circuit recently addressed this precise issue in <u>Waste Mgmt</u>, 372 F.3d at 342-45. It explained that the plain language of 9 U.S.C. § 3 requires the District Court to stay an action in which the issue in dispute is referable to arbitration, and that it is irrelevant whether the party seeking the stay is a signatory to the arbitration agreement:

> in any suit brought in federal court "upon any issue referable to arbitration" under a written arbitration agreement, "the court . . . <u>shall</u> on application of one of the parties" stay the suit. 9 U.S.C. § 3 (emphasis added). The grammatical structure of the sentence would seem to make clear that <u>any</u> of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement. Although the final phrase of the statute—"providing the applicant for the stay is not in default in proceeding with such arbitration"—suggests that Congress contemplated that the litigant applying for the stay would also be a party to the arbitration, the preceding language allows for the anomalous situation where a non-signatory requests a stay of litigation on an issue covered by an arbitration agreement.

<u>Waste Mgmt.</u>, 372 F.3d at 342 (emphasis in original).[1] Thus, the critical question in determining whether a stay is mandatory under § 3 is <u>not</u> whether the parties to the litigation are also signatories to an arbitration agreement, but rather whether the claims sought to be stayed are

---

[1]     Nuance cites language from an earlier 5th Circuit decision, <u>In re Talbott Big Foot, Inc.</u>, 887 F.2d 611, 614 (5th Cir. 1989), for the proposition that the mandatory stay provision of 9 U.S.C. § 3 only applies to those parties who are contractually bound by the arbitration agreement. To the extent <u>Talbott</u> suggested any such rule, however, it is no longer the law in the Fifth Circuit in light of a multitude of more recent decisions: <u>Waste Mgmt.</u>, <u>Hill v. Gen. Elec. Power Sys., Inc.</u>, 282 F.3d 343, 347-348 (5th Cir. 2002), <u>Harvey v. Joyce</u>, 199 F.3d 790, 795-796 (5th Cir. 2000), and <u>Subway Equip. Leasing Corp. v. Forte</u>, 169 F.3d 324, 329 (5th Cir. 1999). Each of these subsequent Fifth Circuit cases reaches the opposite conclusion without even referring to the purportedly "unequivocal" holding from <u>Talbott</u> that Nuance cites.

.

"referable" to arbitration.  Id. at 342-43; see also AppForge, Inc. v. Extended Sys., Inc., 2005 WL 705341, *9 (D. Del. 2005) (holding that "a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement").

Waste Management then sets forth a three-part test to determine whether an issue is "referable to arbitration" in cases where a party in litigation is not also a party to the arbitration. The three factors District Courts should consider are whether:  "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration."  Id. at 343.  It is thus the interrelationship between the claims at issue in litigation and arbitration that determines whether the District Court should grant a mandatory stay, rather than (as Nuance contends) the identity of the parties.

The Fourth and Eighth Circuits have reached virtually identical conclusions, holding that 9 U.S.C. § 3 "is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act."  Contracting Northwest, Inc. v. City of Fredericksburg, 713 F.2d 382, 387 (8th Cir. 1983); see also American Home Assurance Co. v. Vecco Concrete Constr. Co., 629 F.2d 961, 964 (4th Cir. 1980).  Indeed, the Fourth Circuit's decision in American Home Assurance Co. held that a stay was appropriate on facts that are closely analogous to those presented in this action.  A third-party defendant brought a motion to stay a multi-party litigation—including claims brought against it by parties who had not agreed to arbitrate—pending resolution of an arbitration between it and another defendant regarding indemnity obligations.  The trial court denied the motion to stay.  The Fourth Circuit reversed, holding that because the arbitration and litigation involved common questions of fact, "all

5.

.

litigation should be stayed pending the arbitration proceedings" despite the fact that the "arbitrator's findings will not be binding as to those not parties to the arbitration."  629 F.2d at 964.

Panels in the Second and Seventh Circuits have also reached the same conclusion.  For example, in McCowan v. Sears, Roebuck & Co., 908 F.2d 1099, 1106-1108 (2d Cir. 1990), the Second Circuit held that a party to an arbitration agreement was entitled to a mandatory stay of parallel litigation under 9 U.S.C. § 3 even though the plaintiff did not seek any relief from that party in the litigation.  Similarly, in Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp., 916 F.2d 402, 407 (7th Cir. 1990), the Seventh Circuit held that "a party to litigation involving issues subject to an arbitration agreement . . . is entitled to a stay under section 3 of the FAA regardless of its status as a party to the arbitration agreement."

Although some courts still adhere to the view that a mandatory stay does not lie under 9 U.S.C. § 3 unless both the party seeking the stay and the party sought to be stayed are parties to the underlying arbitration agreement, e.g., DSMC Inc. v. Convera Corp., 349 F.3d 679, 684-85 (D.C. Cir. 2003),[2] these courts have expressly affirmed that District Courts have the discretion to grant stays in favor of arbitration if, for example, the litigation will have the effect of damaging a party's right to arbitration.  E.g., IDS Life Ins. Co. v. Sunamerica, Inc., 103 F.3d 524, 530 (7th Cir. 1996); DSMC Inc., 349 F.3d at 684-85 ("District courts may certainly consider stays in circumstances such as these as a matter of discretionary control of their docket.").  Indeed, these

---

[2]     Indeed, separate three-judge panels from both the Second and Seventh Circuits have issued published opinions that create intra-circuit splits on this issue.  Compare McCowan, 908 F.2d at 1106-1108 with Citrus Marketing Board of Israel v. J. Lauritzen A/S, 943 F.2d 220, 224-25 (2d Cir. 1991); and compare Morrie Mages, 916 F.2d at 407 with IDS Life Ins. Co. v. Sunamerica, Inc., 103 F.3d 524, 529-30 (7th Cir. 1996).

.

courts have made clear that a District Court abuses its discretion if it does not stay litigation pending arbitration where the litigation will prejudice a party to the arbitration.  E.g., WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 75-76 (2d Cir. 1997).

The Third Circuit has not yet expressly ruled on the issue of whether 9 U.S.C. § 3 provides for a stay of litigation if either the moving party or the party sought to be stayed is not a party to an arbitration agreement.[3]  However, in Rhone Mediterranee Compagnia Francese di Assicurazioni e Riassicurazoni v. Lauro, 712 F.2d 50, 54-55 (3d Cir. 1983), the Third Circuit affirmed a District Court's decision to stay claims against a defendant who was not a party to the arbitration agreement.  In the underlying action, the District Court found that the claims against the defendant who was not a party to the arbitration agreement were "based on the same operative facts, and . . . inherently separable from" the claims that would be decided in the separate arbitration.  555 F. Supp. 481, 486 (D.V.I. 1982).  Accordingly, the District Court concluded that if the litigation were allowed to proceed, "the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."  Id. (citation omitted).  The Third Circuit agreed, holding that since an issue critical to the litigation would be decided in the separate arbitration, "it was proper to stay the entire case."  712 F.2d at 55.

In short, numerous decisions have held that a stay of litigation is mandatory under 9 U.S.C. § 3 when the claims in the litigation are intertwined with a pending arbitration—even if the moving party or the party sought to be stayed is not a party to the arbitration.  Other courts

---

[3]    Tellme has not located any Third Circuit authority that directly addresses this issue, and Nuance has cited none it is opposition papers.

.

have reached the same result, but have held that the stay is discretionary rather than mandatory. Tellme believes that the Court should apply the line of cases that holds that a stay is mandatory. As explained below, however, under either standard, Tellme is entitled to a stay.

> B.    THE RELEVANT PROVISIONS OF THE 1999 LICENSE AGREEMENT DEMONSTRATE THAT THIS ACTION IS BASED ON THE SAME OPERATIVE FACTS AND INHERENTLY INSEPARABLE FROM THE PENDING ARBITRATION BETWEEN TELLME AND NUANCE USA

The 1999 license agreement between Tellme and Nuance USA contains three separate sets of provisions that are critical to this motion to stay:

First, Nuance USA granted Tellme a "perpetual . . . license under all of Nuance's intellectual property . . . to use, execute, demonstrate, implement, integrate into other software programs, [and] perform services" with Nuance USA's software "on an Integrated System." Berry Declaration, Exh. A at 2 (Agreement, §§ 2.A & 2.A.i). "Integrated System" is defined in the agreement to mean "any of [Tellme's] computer/operating system/IVR [interactive voice recognition] combination(s) that include and operate Nuance Software." Id., Exh. A at 1 (Agreement, § 1.5). The agreement specifically provides that among the "services" that Tellme will provide with its "Integrated System[s]" are the delivery of "information and content . . . to the public via a software-based telephone interface." Id., Exh. A at 11 (Agreement, § 9.16.A).

Second, Nuance USA warranted that "it owns or has license rights to sublicense the Software and has all necessary intellectual property and other rights, title, and interest to grant the rights set forth herein to [Tellme], free of any claims, liens, or conflicting rights in favor of any third party[.]" Id., Exh. A at 6 (Agreement, § 6.1.D).

.

Third, Nuance USA agreed to "defend and indemnify [Tellme] . . . against a claim that Software furnished and used within the scope of this Agreement infringes any patent, copyright, or trademark . . . [unless the] claim is based on . . . [Tellme's] use of the Software in combination with other hardware or software not provided by Nuance and not required to operate the Software in conformance to the Documentation[.]" <u>Id.</u>, Exh. A at 7 (Agreement, § 7.1). "Documentation" is defined in the agreement to mean "user documentation for use of and provided with the Software sufficient to explain the Software's operation, including without limitation any a.p.i. specifications or flowcharts for the licensed software." <u>Id.</u>, Exh. A at 1 (Agreement, § 1.2).

Relying on these contract provisions, Tellme has asserted four separate claims against Nuance USA in the pending arbitration. First, Tellme seeks a determination that it already has a license to the patents-in-suit by virtue of its license agreement with Nuance USA. Berry Decl., Exh. K at 68. Second, in the alternative, if Nuance USA does not already have rights to the patents, then Tellme seeks a determination that Nuance USA has breached its warranty to Tellme and is therefore liable for damages. <u>Id.</u> Third, Tellme seeks a determination that Nuance USA is obligated to defend and indemnify Tellme against Nuance's patent infringement claims. <u>Id.</u> Fourth, Tellme seeks a determination that Nuance USA is obligated to obtain a license to the patents-in-suit on Tellme's behalf (or provide Tellme with non-infringing software). <u>Id.</u>

As explained in Tellme's Opening Brief, all of the claims identified in the preceding paragraph are plainly governed by the broad arbitration provision in the license agreement between Tellme and Nuance USA, and therefore must be decided by the arbitration panel: "[T]he district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate. Once such an agreement

9.

.

is found, the merits of the controversy are left for disposition to the arbitrator." <u>Great W.</u>
<u>Mortgage Corp. v. Peacock</u>, 110 F.3d 222, 228 (3d Cir. 1997).

Nuance responds by arguing that this Court should summarily conclude—before any
discovery has even been taken—that Tellme will lose on each of its claims.  Not surprisingly,
Nuance cites no authority in support of its contention that this Court should examine the merits
of Tellme's arbitration claims.  But even assuming that the Court should engage in such an
examination (which it clearly should not), Tellme's claims easily survive scrutiny.

## 1.    BREACH OF WARRANTY

As noted above, Nuance USA warranted in the 1999 license agreement that it had all
rights necessary in order to allow Tellme to use Nuance USA's software as part of an "Integrated
System" that would offer "information and content" services "to the public via a software-based
telephone interface."  Berry Declaration, Exh. A at 1-2, 6, 11 (Agreement, §§ 1.5, 2.A, 6.1.D, &
9.16.A).  Accordingly, to the extent that Tellme's integrated systems that incorporate Nuance
USA's software somehow infringe Nuance's patents, Nuance USA has breached its warranty and
is liable to Tellme for damages.

Nuance's only response to Tellme's claim for breach of warranty is a passing statement
that the claim is "really one and the same" with Tellme's claim that Nuance USA is obligated to
defend and indemnify Tellme (an obligation that Nuance contends is sharply limited by language
in § 7.1 of the license agreement).  Nuance Opp. Br. (D.I. 17) at 22.  Nuance is wrong.  Nuance
USA's warranty in the license agreement is separate from and in addition to Nuance USA's
obligation to defend and indemnify Tellme from plaintiffs' infringement claims.  The warranty
and indemnification obligations are contained in separate provisions of the agreement, and the

.

warranty obligation does not contain any of the qualifying language upon which Nuance erroneously relies in defense of Tellme's indemnity claim (discussed below).  See Berry Decl., Exh. A at 6-7 (Agreement §§ 6.1 & 7.1).  Thus, even if Nuance were correct on its defense to Tellme's indemnity argument (and it is not), this fact has no impact on Tellme's separate and independent claim for breach of warranty.  If Tellme's use of the Nuance USA software in its integrated systems infringes the asserted patents—as claimed by Nuance—then Nuance USA has breached its warranty obligations to Tellme, and the arbitrators will need to fashion an appropriate remedy.  This will (to say the least) substantially alter the landscape of this litigation.

## 2.    DUTY TO DEFEND AND INDEMNIFY

Nuance argues at length that Nuance USA is not obligated to defend and indemnify Tellme because of the following phrase contained in § 7.1 of the 1999 license agreement: "Nuance shall have no liability for any claim of infringement to the extent such claim is based on . . . use of the Software in combination with other hardware or software not provided by Nuance and not required to operate the Software in conformance to the Documentation."[4]  Berry Decl., Exh. A at 7 (Agreement § 7.1) (emphasis added).  As noted above, "Documentation" is defined to mean "user documentation for use of and provided with the Software sufficient to explain the Software's operation, including without limitation any a.p.i. specifications or flowcharts for the licensed software."  Berry Decl., Exh. A at 1 (Agreement § 1.2).

---

[4]     Nuance has submitted a declaration from one of its attorneys (M. Edward Ross) that improperly purports to interpret the meaning of various clear and unambiguous provisions of the 1999 license agreement, including the indemnity provision.  Tellme objects to Mr. Ross's declaration on the grounds that the 1999 license agreement speaks for itself and that Mr. Ross's declaration lacks foundation.

.

Nuance argues that Nuance USA has no indemnity obligation because Tellme uses software and hardware components in its integrated systems that are not provided by Nuance USA.  Sharp Decl., ¶ 7.  Nuance neglects to mention, however, that this additional hardware and software is <u>required</u> in order to operate Nuance USA's voice recognition software in conformance with the user documentation provided by Nuance USA (and, in fact, to operate the software at all).  Indeed, the Nuance Speech Recognition System Installation Guide for Version 8.5 of Nuance USA's voice recognition software (the software presently used by Tellme) "describes the <u>requirements</u> to install and run the Nuance System" as including:  (1) an operating system (such as Windows 2000); (2) a compiler; (3) an audio provider; (4) a database (such as Oracle 9.2); (5) TTS (an application which converts text into speech); (6) a Java speech channel; (7) a processor (such as a 500 MHz Pentium II); (8) memory (such as RAM); and (9) hard disk storage space.  Supplemental Declaration of Lisa C. Berry ("Supp. Berry Decl.,"), ¶ 3 & Exh. A at 3-4 (emphasis added).

In its opposition papers, Nuance identifies—in a very generic manner—features of Tellme's integrated system that allegedly infringe Nuance's patents.  As to Nuance's '088 Patent, Nuance contends that Tellme's automated directory assistance applications infringe by transmitting recorded speech to a "human attendant so as to enable the completion of the desired task through automation" rather than using the voice recognition software to recognize it. Nuance Opp. Br. (D.I. 17) at 10.  However, Nuance USA's own documentation states that the Nuance System includes a "mechanism" that "records some or all of the utterances processed by the recognizer during the call."  Supp. Berry Decl., Exh. B at 8.  The Nuance USA documentation explains:  "In some cases, you might want to record an utterance without actually recognizing it.  For example, an application might want to record portions of a call so they can be

.

played back to the user, or record a complete call for monitoring purposes." Supp. Berry Decl.,

Exh. B at 10. The Nuance USA documentation also provides instructions on how to "recognize

and record simultaneously." Supp. Berry Decl., Exh. B at 10. And, "Nuance recommends" that

applications that use Nuance USA's voice recognition software include a command that will

cause "[t]he system [to] respond[] by transferring the call to a human operator." Supp. Berry

Decl., Exh. C at 21. Thus, Nuance USA's documentation describes—and recommends—that

Tellme perform the very actions that Nuance now contends are the basis of its infringement

claim. Because Tellme is using Nuance USA's software in conformance with Nuance USA's

documentation, Nuance cannot rely on the exculpatory provisions of § 7.1 of the Agreement as a

basis for denying a stay.[5]

### 3.    DUTY TO OBTAIN A LICENSE OR PROVIDE NON-INFRINGING SOFTWARE

Nuance does not dispute that if Nuance USA is obligated to defend and indemnify

Tellme, then Nuance USA would also be required under § 7.1 of the license agreement to either

"procure (at no cost to [Tellme]) a license for [Tellme] to continue using the Software in a

manner equivalent to the license provided" in the agreement or, alternatively, provide Tellme

---

[5]    Nuance makes an identically flawed argument regarding the '630 Patent. Here, Nuance
contends that Tellme's "phone-based applications" use "particular techniques of
performing database searches based on potentially erroneous search inputs." Nuance
Opp. Br. at 10. As noted above, however, Nuance USA's documentation explicitly states
that a database is a "requirement to install and run the Nuance System." Supp. Berry
Decl., Exh. A at 3-4. Moreover, Nuance USA's documentation describes how to perform
database queries, and boasts that a "core" feature of Nuance USA's voice recognition
software is that "The Nuance system can load dynamic grammars [i.e., a dictionary of
words] from . . . a dynamic grammar database." Supp. Berry Decl., Exh. C at 17-18 &
Exh. B at 12-14. So, again, to the extent that Tellme infringes—a conclusion that Tellme
disputes—it does so only because it operates Nuance USA's software in conformance
with Nuance USA's documentation.

.

with non-infringing software.  As explained in the preceding section, there is at the very least a genuine dispute that must be determined in arbitration as to whether Nuance USA is obligated to defend and indemnify Tellme.  Accordingly, there is also a genuine dispute as to whether Nuance USA is obligated to obtain a license to the patents on Tellme's behalf.

4.    TELLME'S CLAIM THAT IT IS ALREADY<br>LICENSED UNDER THE NUANCE PATENTS

Tellme seeks a determination in the arbitration that it has already obtained a license to the patents-in-suit by virtue of its broad license to "all" of Nuance USA's intellectual property.  Berry Decl., Exh. A at 2 (Agreement § 2.1.A).  As noted above, this claim is pled as an alternative theory—to the extent that the arbitration panel concludes that Tellme needs a license under the patents, Tellme seeks a determination that it already has a license by virtue of the 1999 agreement or, in the alternative, that Nuance USA has breached its warranty and is required to defend and indemnify Tellme.  See Berry Decl., Exh. K at 68 (Tellme's arbitration Counterclaim).

Nuance responds by offering evidence that its subsidiary Nuance USA has never possessed any rights to the patents.  As discussed in Tellme's Opening Brief, some of the publicly available documentation contradicts Nuance's contention.  Because discovery has not yet commenced, Tellme cannot fully brief this issue at this time.  As explained above, however, resolution of this issue does not impact whether the current litigation should be stayed.  If Tellme's integrated systems infringe the asserted patents and Tellme does not yet have a license, then (as explained above) Nuance USA has breached its warranty and is liable to Tellme for damages.  In addition, Nuance USA would be obligated to defend and indemnify Tellme, and to obtain a license from its affiliated companies for Tellme.

.

### C.   TELLME SHOULD GET A STAY REGARDLESS OF WHICH LINE OF CASES THE COURT CHOOSES TO FOLLOW

As discussed above, one line of cases interpreting 9 U.S.C. § 3 holds that a trial court should consider three non-exclusive factors in determining whether litigation must be stayed in favor of pending arbitration:  "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." Waste Mgmt., 372 F.3d at 343.

As set forth in Tellme's Opening Brief, and as discussed above, the pending arbitration between Tellme and Nuance USA easily satisfies all three of these requirements.  Both the arbitration and this litigation involve disputes over whether Tellme's integrated systems infringe Nuance's patents and, if so, whether Tellme is licensed under the patents by virtue of its license agreement with Nuance USA or, alternatively, whether Nuance USA has breached its warranty, is obligated to defend and indemnify Tellme, and is obligated to obtain a license on Tellme's behalf.  Accordingly, this litigation and the pending arbitration involve claims that are inherently inseparable and based upon on the same operative facts.  Moreover, forcing Tellme to litigate an expensive two-front litigation—with the attendant risk if inconsistent results—would destroy Tellme's right to a meaningful arbitration.

Nuance responds, without citation to authority, that the litigation and arbitration involve different claims because Nuance USA has asserted a claim for breach of contract against Tellme which claim is not asserted in this litigation.  Nuance Opp. Br. (D.I. 17) at 21.  Nuance has it backwards:  the inquiry into whether a mandatory stay is warranted does not require that all issues in the arbitration be in dispute in litigation; rather, the inquiry is whether the issues to be

.

stayed in the litigation are at issue in the arbitration.  The fact that there may be additional issues involved in the arbitration does not provide a basis for denying a stay.  Nuance also argues that "the only relevant inquiry for the arbitration panel is whether NCUSA's ASR software is itself accused of infringing a third party patent."  Nuance Opp. Br. (D.I. 17) at 21.  As explained above, this contention is plainly incorrect and ignores the express terms of the 1999 license agreement that authorize Tellme to use Nuance USA's software in conjunction with other third-party hardware and software in accordance with Nuance USA's documentation.  Accordingly, Tellme should get a stay under the "mandatory" line of cases.

If the Court elects to follow the line of decisions that holds that a stay pending arbitration is discretionary rather than mandatory, Tellme should still get a stay because it satisfies all requirements for a discretionary stay.  For example, in WorldCrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997), a parent company and its subsidiary sued a defendant who had an arbitration agreement with the subsidiary.  The defendant moved for a stay pending arbitration, and the District Court denied the motion.  The Second Circuit reversed.  The Court of Appeals held that, as an initial matter, the defendant was entitled to a mandatory stay as against the subsidiary.  Id. at 75.  The parent company argued that even if defendant was entitled to a stay as against the subsidiary, the parent's claims could not be stayed because it was not a party to the arbitration agreement.  The Second Circuit disagreed, holding that defendant was plainly entitled to a stay because the parallel litigation "would involve significant expense and inconvenience and might adversely affect the outcome of [defendant's] arbitration against [the subsidiary]."  Id. at 76; see also Danisco A/S v. Novo Nordisk A/S, 2003 WL 282391, at *4 (S.D.N.Y. 2003) (granting defendant's motion to stay patent infringement claims where one plaintiff was party to arbitration agreement with defendant but other plaintiff was not); AppForge, 2005 WL 705341,

.

at *9-10 (granting motion to stay where plaintiff was party to arbitration agreement with defendant parent corporation, but not with defendant subsidiaries).

One additional factor considered by some courts in determining whether to enter a discretionary stay is whether the party seeking the stay will attempt to delay the arbitration. See, e.g., Citrus Marketing Board, 943 F.2d at 225 ("the defendant[ ] should demonstrate to the satisfaction of the court that [it] ha[s] not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship") (alterations in original, citation omitted). This factor favors Tellme as well. Nuance does not contend—nor could it contend—that Tellme has taken any steps to hamper the progress of the arbitration proceeding. Declaration of Iian Jablon ("Jablon Decl."), ¶ 2. Indeed, the arbitration proceeding between Tellme and Nuance USA is likely to be completed by late 2006 or early 2007—far less than a year from now. Id.

Recognizing that Tellme has met its burden of showing that a stay is appropriate under both the "mandatory" and "discretionary" lines of cases that have considered stays pending arbitration, Nuance argues that the Court should instead import a three-factor test derived from cases where the Federal Arbitration Act is not at issue: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Nuance Opp. Br. at 15 (quoting Argos v. Orthotec LLC, 304 F. Supp. 2d 591, 598 (D. Del. 2004)). Although none of the numerous Court of Appeals decisions cited by Tellme and Nuance in connection with a stay pending arbitration apply this test, Tellme would clearly satisfy it even if it did apply.

.

First, Nuance has failed to demonstrate that it would suffer any substantial prejudice if the case is stayed.[6]  Nuance contends that it will be prejudiced because the arbitration "will likely last for at least a year or more," and a stay will provide Tellme with a "de facto" license to Nuance's patents.  Nuance Opp. Br. (D.I. 17) at 17.  It is unclear why Nuance expects the arbitration to last more than a year—outside counsel for both parties participated in a March 22, 2006 call with the American Arbitration Association (which is administering the arbitration proceeding) in which the parties tentatively discussed proceeding with the arbitration hearing in Fall 2006.  Jablon Decl., ¶ 2.  Even if the arbitration hearing date is ultimately pushed back, there is every reason to expect that the arbitration will be concluded by late 2006 or early 2007—far less than a year from now.  Id.  Moreover, Nuance makes no effort to explain why it could not be made whole by money damages in the unlikely event that the arbitration panel were to rule in Nuance USA's favor and a jury were subsequently to find that Tellme infringes Nuance's patents.  It should be noted that any such explanation would be very difficult for Nuance, given that Tellme has been using Nuance USA's software the same way since 1999 without objection, and has paid Nuance USA millions of dollars in licensing fees during that time period.

---

[6]    Nuance cites Walter Oil & Gas Corp. v. Teekay Shipping, 270 F. Supp. 2d 855 (S.D. Tex. 2003), as purportedly supporting the view that Tellme has not demonstrated adequate prejudice in order to support a stay.  Walter Oil is completely inapposite.  In that case, two of several defendants were parties to a separate arbitration proceeding in which one sought contractual indemnification from the other.  The trial court refused to stay plaintiff's tort claims until the arbitration was concluded based on its finding that plaintiff's underlying claims were "totally unrelated" to the indemnification proceeding.  By contrast, here if Tellme prevails in the arbitration, then either (1) Nuance's claims against Tellme will be moot, or (2) Nuance's own wholly-owned subsidiary will be required to defend and indemnify Tellme.

.

By contrast, however, Tellme will be substantially prejudiced if Nuance is permitted to impose upon Tellme the burden and expense of parallel litigation on opposite sides of the country.[7]  E.g., WorldCrisa, 129 F.3d at 76 (recognizing that parallel litigation "involves[]s significant expense and inconvenience" that is highly prejudicial).  And though the WorldCrisa decision recognizes that the mere fact of parallel litigation creates sufficient prejudice to require a stay, the facts in this case are even more compelling:  If the arbitrators determine that Nuance USA has breached its warranty of non-infringement, they will likely require Nuance USA to provide Tellme with a defense in this action.  Unless this action is stayed, therefore, Tellme will be denied at least three of the express benefits for which it bargained—to have any disputes relating to the 1999 license agreement arbitrated, to have the disputes heard in California, and to have Nuance USA defend Tellme against claims of patent infringement.

Second, a stay will simplify the issues in this case.  Nuance's argument to the contrary is based entirely upon the premise that Tellme has no colorable claim against Nuance USA.  But, as discussed above, that argument cannot withstand scrutiny.  Nuance may not like Tellme's claims against Nuance USA, but the claims are far more than colorable.  If the Court stays this litigation, Tellme's claims against Nuance USA will be resolved first, with the likely result that all or large portions of this action will be rendered moot.  If this action proceeds in parallel with the arbitration, however, then Tellme will be forced to litigate the same issues in both forums

---

[7]    Tellme notes that its license agreement with Nuance USA provides that all disputes shall be resolved in Northern California.  Berry Decl., Exh. A at 9-10 (Agreement §§ 9.5 & 9.8).  Nuance's effort to force Tellme to litigate this dispute in Delaware is yet another reason that Tellme's motion to stay should be granted.

.

simultaneously—a result that will be expensive for Tellme, time consuming for the Court, and which will risk inconsistent results.

Third, no discovery has been taken in this case and the matter is not yet set for trial. Even Nuance concedes that this factor supports the conclusion that a stay is appropriate here. Nuance Opp. Br. (D.I. 17) at 20.

In short, Tellme is entitled to a stay even under the standard that Nuance improperly attempts to import from decisions that have nothing to do with a stay pending arbitration.

.

<u>CONCLUSION</u>

For all the foregoing reasons, Tellme respectfully requests that the Court stay this action pending completion of the concurrent arbitration between Tellme and Nuance USA, which arbitration is currently expected to conclude in late 2006 or early 2007.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*
_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, DE  19801
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendant*
*Tellme Networks, Inc.*

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan
Iian D. Jablon
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA  90067
(310) 277-1010

May 15, 2006
520463

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 15, 2006, I caused to be electronically filed Defendant Tellme Networks, Inc.'s Reply Brief In Support Of Its Motion To Stay Action Pending Arbitration with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell
> Richards, Layton & Finger

I also certify that copies were caused to be served on May 15, 2006, upon the following in the manner indicated:

### <u>BY HAND</u>

> Frederick L. Cottrell
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE  19899

### <u>BY FEDERAL EXPRESS</u>

> Mark A. Samuels
> O'Melveny & Meyers LLP
> 400 South Hope Street
> Los Angeles, CA  90071

> */s/ Rodger D. Smith II*

> _____
> Rodger D. Smith II (#3778)
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899-1347
> (302) 658-9200
> rsmith@mnat.com