IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., a Delaware corporation, and PHONETIC SYSTEMS LTD., an Israeli corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> TELLME NETWORKS, INC., a Delaware corporation, <br><br> Defendant | C. A. No. 06-105-SLR <br><br> **Jury Trial Demanded** |

## ANSWER TO COUNTERCLAIMS

Plaintiffs Nuance Communications, Inc. ("NCI") and Phonetic Systems, Ltd. ("PHONETIC") (NCI and PHONETIC collectively referred to as "Plaintiffs") reply to Defendant Tellme Networks, Inc.'s ("TELLME") Counterclaims as follows:

### THE PARTIES AND JURISDICTION

1.  Plaintiffs admit that Counterclaimant TELLME is a Delaware corporation with its principal place of business in Mountain View, California. Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of each and every remaining allegation contained in paragraph 1, and on that basis deny the same.

2.  Admit.

3.  Admit.

4.  No answer is required to the allegations contained in paragraph 4, which merely state conclusions of law.

5.  No answer is required to the allegations contained in paragraph 5, which merely state conclusions of law.

6.  No answer is required to the allegations contained in paragraph 6, which merely state conclusions of law.

## FACTUAL BACKGROUND

7.  Plaintiffs admit that in November 1999 TELLME entered into a "Strategic Partner License and Support Agreement" ("the License Agreement") with an entity now called Nuance Communications LLC, formerly called Nuance Communications USA, Inc. (NCUSA), but Plaintiffs specifically deny that TELLME entered into the License Agreement with Plaintiff NCI. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "[NCUSA] grants to Customer and Customer accepts a worldwide, perpetual, fully paid-up, irrevocable (so long as Customer is in compliance with the terms of this Agreement), non-exclusive, non-transferable (except for assignment in accordance with Section 2.3) license under all of [NCUSA]'s intellectual property rights as follows: i. to use, execute, demonstrate, implement, integrate into other software programs, support, maintain, perform services with the Software in object code listed in Schedules A and B, and any Updates thereof, solely for Customer's business and enhancements thereto; solely on an Integrated System or on a backup or testing system; solely at Location(s); and solely for the capacity number of ports or other limitation (if any limitation applies) ordered pursuant to an executed Order Form; . . . ." ¶ 2.1.A.i. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "For the purposes of this Section 9.14, 'Services' means the provision of information and content (such as stock quotes, weather reports, news, sports reports, horoscopes, traffic reports, soap opera updates, restaurant recommendations and driving directions) to the public via a software-based telephone interface." ¶ 9.16.A. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "'Integrated System(s)' shall mean any of Customer's

computer/operating system/IVR combination(s) that include and operate [NCUSA] Software." ¶ 1.5. Plaintiffs deny any remaining allegations in paragraph 7, and specifically deny that Plaintiff NCI granted any license to TELLME under the License Agreement. Plaintiffs also specifically deny any characterization of paragraphs 2.1.A.i, 9.16.A, or 1.5 of the License Agreement as not being subject to other conditions and provisions of the License Agreement.

8.  Plaintiffs admit that, among other conditions and provisions, the License Agreement states "[NCUSA] shall offer Customer in the future all Software, modifications, enhancements, new products, and programming-related services no later than the time it makes these available to any other customer or third party, including in alpha, beta, or other early or trial form. Customer will also be, at no extra charge, a beta test site for all [NCUSA]'s pre-release versions and features, provided that Customer is willing to and does adhere to the reporting and associated obligations that [NCUSA] routinely imposes on other beta test sites in connection with such status. [NCUSA] shall offer its future software products, including without limitation additional languages and Grammars, to Customer at the same discount schedule set forth in Exhibit B, and determined under that schedule by the quantity of recognition ports that have been already paid for at the time of any applicable order." ¶ 2.1.H. Plaintiffs deny any remaining allegations in paragraph 8, and specifically deny that Plaintiff NCI entered into the License Agreement with TELLME. Plaintiffs also specifically deny any characterization of paragraph 2.1.H of the License Agreement as not being subject to other conditions and provisions of the License Agreement.

9.  Plaintiffs admit that, among other conditions and provisions, the License Agreement states "[NCUSA] warrants that (i) it owns or has license rights to sublicense the Software and has all necessary intellectual property and other rights, title, and interest to grant

the rights set forth herein to Customer, free of any claims, liens, or conflicting rights in favor of any third party, (ii) no agreements with third parties preclude Customer from using the Software in any way, and that (iii) no claims or litigation are pending against [NCUSA] with respect to the Software or related intellectual property rights; . . . ." ¶ 6.1.D. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "[NCUSA] will defend and indemnify Customer, its shareholders, directors, officers, employees, agents and affiliated companies from and against any losses, costs, or damages (including reasonable attorneys' fees) against a claim that Software furnished and used within the scope of this Agreement infringes any patent, copyright, or trademark or other intellectual property right, provided that: (a) Customer notifies [NCUSA] of such claim in writing within sixty (60) days of the claim; (b) at [NCUSA]'s expense, [NCUSA] has sole control of the defense and settlement negotiations to the extent based upon the Software; and (c) Customer provides [NCUSA] with the reasonable assistance, information, and authority necessary to perform [NCUSA]'s obligations under this Article. [NCUSA]'s indemnification obligation in the event these conditions are not met will only be reduced to the extent that such failure has materially harmed [NCUSA]'s ability to successfully address the matter. [NCUSA] shall have no liability for any claim of infringement to the extent such claim is based on: (i) use of a superseded or altered release of the Software where a current release has been made available to Customer at no extra charge and such altered release of the Software is in violation of the terms of this Agreement (if the infringement would have been avoided by the use of a current or unaltered release of the Software); (ii) use of the Software in combination with other hardware or software not provided by [NCUSA] and not required to operate the Software in conformance to the Documentation; (iii) a Customer or third party application as opposed to the [NCUSA] Software; (iv) Professional Services in compliance with

Customer's design specifications; or (v) use of the Software other than as permitted under this Agreement or in a manner for which it was not intended." ¶ 7.1. Plaintiffs deny any remaining allegations in paragraph 9, and specifically deny that Plaintiff NCI entered into the License Agreement with TELLME. Plaintiffs also specifically deny any characterization of paragraphs 6.1.D or 7.1 of the License Agreement as not being subject to other conditions and provisions of the License Agreement.

      10. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "All disputes arising under this Agreement shall be conducted under confidential proceedings." ¶ 9.5. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "The terms of this Agreement will be kept confidential. The parties will consult with each other and obtain prior written consent prior to any press releases announcing the existence of this Agreement. [NCUSA] must seek Customer's written consent prior to using Customer as a reference for its products." ¶ 9.12. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "Customer represents that it intends, following the Effective Date, to offer Services. [NCUSA] represents that, as of the Effective Date, [NCUSA] does not intend to offer Services directly or through an Affiliate. The parties understand and agree that other [NCUSA] licensees may offer services that directly compete with the services provided by Customer." ¶ 9.16.B. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "If, following the Effective Date, [NCUSA] determines that it will offer services that directly compete with the Services provided by Customer, then [NCUSA] shall notify Customer thereof as soon as reasonably practicable following such determination. Following any such notification, [NCUSA] and Customer shall discuss the situation, including whether Customer wishes to terminate this Agreement in

accordance herewith. [NCUSA] shall not act through an Affiliate for the purpose of avoiding its obligations under this Section 9.16." ¶ 9.16.C. Plaintiffs deny any remaining allegations in paragraph 10, and specifically deny that Plaintiff NCI entered into the License Agreement with TELLME. Plaintiffs also specifically deny any characterization of paragraphs 9.5, 9.12, 9.16.B, or 9.16.C of the License Agreement as not being subject to other conditions and provisions of the License Agreement.

11. Plaintiffs admit that on March 10, 2000, NCUSA's predecessor entity, Nuance Communications, Inc., a California corporation, reincorporated in Delaware. Subsequent to this reincorporation, NCI's predecessor, ScanSoft, acquired NCUSA's predecessor, Nuance Communications, Inc. Subsequent to this acquisition, NCUSA's predecessor, Nuance Communications, Inc. was renamed as NCUSA and ScanSoft, Inc. was renamed as NCI. Plaintiffs deny any remaining allegations in paragraph 11, and specifically deny that Plaintiff NCI ever assumed the License Agreement with TELLME.

12. Plaintiffs admit that, among other conditions and provisions, the License Agreement states "This Agreement shall remain in effect for five (5) years and shall be automatically renewable each succeeding year thereafter unless (i) written notice to the contrary is sent thirty (30) days prior to each one-year anniversary after the Commencement Date of this Agreement, or (ii) unless otherwise terminated as set forth below." ¶ 5.1. Plaintiffs deny any characterization of paragraph 5.1 of the License Agreement as not being subject to other conditions and provisions of the License Agreement. Plaintiffs admit that NCUSA agreed to extend the License Agreement according to the terms of the September 20, 2003 letter "Re: Letter Agreement for Tellme Network, Inc", but Plaintiffs deny that Plaintiff NCI granted any rights to TELLME in this letter. Plaintiffs admit that, among other conditions and provisions, the

License Agreement states "If this Agreement expires at the end of its term or is terminated by Customer with or without cause, then (a) Customer shall continue to have the licenses granted on a fully paid-up and perpetual basis including the right to continue using the copies of the Software then in its possession to continue its service, and (b) the terms of this Agreement that need to survive in order to enable this shall so survive for this purpose. If a license granted under this Agreement terminates for reasons of Customer's material breach, then Customer will (a) cease using the applicable Software, and (b) certify to [NCUSA] within thirty (30) days of expiration or termination that Customer has destroyed or returned to [NCUSA] the Software and all copies thereof remaining in Customer's possession. This requirement applies to copies in all forms, partial and complete, in all types of media and computer memory, and whether or not modified or merged into other materials." ¶ 5.4. Plaintiffs deny any characterization of paragraph 5.4 of the License Agreement as not being subject to other conditions and provisions of the License Agreement. Plaintiffs deny any remaining allegations in paragraph 12, and specifically deny that Plaintiff NCI entered into the License Agreement with TELLME.

13.    Deny.

14.    Plaintiffs admit that NCUSA developed a product entitled Nuance Directory Assistance Automation ("NDAA"). Plaintiffs deny the remaining allegations of paragraph 14.

15.    Plaintiffs admit that in or about May 2005, NCUSA announced its intent to be acquired by ScanSoft, Inc. as a wholly-owned subsidiary. Admit that the United States Department of Justice (the "DOJ") issued a "Request for Additional Information" ("Second Request"). Plaintiffs deny the remaining allegations of paragraph 15.

16.    Plaintiffs admit that ScanSoft, Inc.'s acquisition of NCUSA closed on or about September 15, 2005. Admit that NCUSA's predecessor, Nuance Communications, Inc., was

renamed NCUSA. Admit that ScanSoft, Inc. was renamed NCI. Admit that NCUSA became a wholly-owned subsidiary of NCI. Plaintiffs deny the remaining allegation of paragraph 16.

17. Plaintiffs admit that before the conference, a NCI employee sent an individual at Tellme an e-mail stating, "I need to ask that your folks not attend the conference this year until we advance our partnership and clarify the markets in which will cooperate, and perhaps compete, going forward." Plaintiffs deny the remaining allegations of paragraph 17.

18. Deny.

19. Plaintiffs admit that NCUSA filed an arbitration demand against Tellme on February 17, 2006. Admit that NCI sent letters to certain parties stating that "Tellme materially breached the agreement by disclosing certain confidential information of NCUSA to a competitor. NCUSA had no recourse but to terminate its contract with Tellme and institute arbitration proceedings to seek redress for Tellme's actions." These letters were produced to defendant in its arbitration with NCUSA. Plaintiffs deny the remaining allegations of paragraph 19.

## FIRST COUNTERCLAIM
## (TORTIOUS INTERFERENCE WITH CONTRACT)

20. Incorporate by reference the responses to the allegations of Paragraphs 1 through 19.

21. Deny.

## SECOND COUNTERCLAIM

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT

## RE U.S. PATENT NO. 5,033,088)

22. Incorporate by reference the responses to the allegations of Paragraphs 1 through 21.

23. Deny.

24. Admit.

25. Admit.

## THIRD COUNTERCLAIM

## (DECLARATORY JUDGMENT OF INVALIDITY

## RE U.S. PATENT NO. 5,033,088)

26. Incorporate by reference the responses to the allegations of Paragraphs 1 through 25.

27. Deny.

28. Admit.

29. Admit.

## FOURTH COUNTERCLAIM

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT

## RE U.S. PATENT NO. 6,256,630)

30. Incorporate by reference the responses to the allegations of Paragraphs 1 through 29.

31. Deny.

32. Admit.

33.	Admit.

## AFFIRMATIVE DEFENSES

For its separate, affirmative defenses, Plaintiffs aver as follows:

### FIRST DEFENSE

1.	TELLME'S Counterclaim of tortious interference with contract fails to state a claim for which relief can be granted.

### SECOND DEFENSE

2.	TELLME'S Counterclaim of tortious interference with contract is barred by the defense of privilege.

### THIRD DEFENSE

3.	TELLME's Counterclaims are barred in whole or in part on the ground that TELLME has not been damaged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Nuance Communications, Inc. and Phonetic Systems Ltd. pray for judgment on Defendant's Counterclaims as follows:

(1)	Awarding Defendant nothing on its Counterclaims;

(2)	Preliminarily and permanently enjoining Defendant, its officers, agents, servants, and employees, and all persons acting in concert with Defendant, from infringing and contributing to and/or inducing others to infringe U.S. Patent Nos. 5,033,088 and 6,256,630;

(3)	Awarding Plaintiffs damages based on Defendant's infringement of U.S. Patent Nos. 5,033,088 and 6,256,630, and trebling same by reason of the willful, wanton and deliberate nature of such infringement;

(4)	Assessing prejudgment interest on damages;

(5) Declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding Plaintiffs their attorney's fees and costs in this action; and

(6) Awarding such other and further relief as the Court deems just and equitable.

OF COUNSEL:

Dale M. Cendali
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Mark C. Scarsi
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Dated: February 5, 2007

_____
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

*Attorneys for Plaintiffs Nuance Communications, Inc. and Phonetic Systems Ltd.*

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

**VIA HAND DELIVERY**

Jack B. Blumenfeld
Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE  19899-1347

I hereby certify that on February 5, 2007, the foregoing document was sent to the following non-registered participants in the manner indicated:

**VIA FEDERAL EXPRESS**

Morgan Chu, Esquire
Jonathan S. Kagan
Iian Jablon
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA  90067

_____
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com

RLF1-3100495-1